20-5143

# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

|  |  |  |
|---|---|---|
| In re: Michael T. Flynn, | ) ) ) ) ) ) | On Petition for a Writ of Mandamus to the United States District Court for the District of Columbia Case No. 17-232 (EGS) |

## BRIEF FOR THE STATES OF OHIO, ALABAMA, ALASKA, ARKANSAS, FLORIDA, GEORGIA, INDIANA, LOUISIANA, MISSISSIPPI, MISSOURI, MONTANA, OKLAHOMA, SOUTH CAROLINA, TEXAS, UTAH, AND WEST VIRGINIA AS *AMICI CURIAE* SUPPORTING THE PETITIONER

DAVE YOST
Attorney General of Ohio

BENJAMIN M. FLOWERS
  *Counsel of Record*
Ohio Solicitor General
30 E. Broad St., Floor 17
Columbus, OH 43215
Tel: 614.466-43215
bflowers@ohioattorneygeneral.gov

*Counsel for amici States*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

**A. Parties and *Amici*:** Except for the following, all parties, intervenors, and *amici* appearing before the District Court and in this Court are listed in Michael T. Flynn's petition for a writ of mandamus:

*Amici*: States of Ohio, Alabama, Alaska, Arkansas, Florida, Georgia, Indiana, Louisiana, Mississippi, Missouri, Montana, Oklahoma, South Carolina, Texas, Utah, and West Virginia

**B. Rulings Under Review:** References to the rulings at issue appear in Michael T. Flynn's petition for a writ of mandamus.

**C. Related cases:** This case has not previously been before this Court and there are no pending related cases in this Court.

# TABLE OF CONTENTS

**Page**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ........... i

TABLE OF CONTENTS ...................................................................... ii

TABLE OF AUTHORITIES ................................................................ iii

STATEMENT OF *AMICI* INTEREST AND SUMMARY OF ARGUMENT .... 1

ARGUMENT ...................................................................................... 3

    I.    The District Court is acting unconstitutionally by appointing an *amicus curiae* to prosecute General Flynn instead of granting the United States' motion to dismiss. ..................................................................... 3

        A.    The decision to charge a crime is a critically important function, deliberately left to the executive branch alone. ................................. 4

        B.    Courts lack authority to exercise judgment over a decision that constitutionally belongs to the executive branch. .............................. 6

    II.    General Flynn is entitled to a writ of mandamus. .................................. 11

CONCLUSION ................................................................................... 14

CERTIFICATE OF COMPLIANCE .................................................... 16

CERTIFICATE OF SERVICE ............................................................. 17

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*In re Aiken Cty.*,
    725 F.3d 255 (D.C. Cir. 2013) ................................................ 5, 6, 7, 8

*Alderson v. State*,
    273 S.W.3d 533 (Mo. 2009)...........................................................6

*Cheney v. United States Dist. Court*,
    542 U.S. 367 (2004) ...................................................................12

*City of Norwood v. Horney*,
    110 Ohio St. 3d 353 (Ohio 2006).................................................6

*Confiscation Cases*, 7 Wall. 454 (1869) ......................................7

*Cty. of Orange v. United States Dist. Court*,
    784 F.3d 520 (9th Cir. 2015) ................................................12, 13

*Dairy Queen, Inc. v. Wood*,
    369 U.S. 469 (1962).....................................................................12

*Doe v. Univ. of Mich. (In re Univ. of Mich.)*,
    936 F.3d 460 (6th Cir. 2019) .......................................................2

*In re: Donald J. Trump*,
    — F.3d. —, No. 18-2486 (4th Cir. May 14, 2020)...........................14

*In re Hot-Hed Inc.*,
    477 F.3d 320 (5th Cir. 2007) ......................................................12

*Morrison v. Olson*,
    487 U.S. 654 (1988) ............................................................... 1, 14

*In re Nat'l Prescription Opiate Litig.*,
    956 F.3d 838 (6th Cir. 2020) .......................................................2

*Nichols v. Alley*,
    71 F.3d 347 (10th Cir. 1995) ......................................................13

*In re NLO*,
 5 F.3d 154 (6th Cir. 1993) ............................................................. 13

*Rinaldi v. United States*,
 434 U.S. 22 (1977) ............................................................................ 9

*In re Rutledge*,
 956 F.3d 1018 (8th Cir. 2020) ......................................................... 2

*Steen v. Appellate Div. of Superior Court*,
 59 Cal. 4th 1045 (Cal. 2014) ............................................................ 6

*United States v. Abushaar*,
 761 F.2d 954 (3d Cir. 1985) .............................................................. 8

*United States v. Armstrong*,
 517 U.S. 456 (1996) ........................................................................... 1

*United States v. Nixon*,
 418 U.S. 683 (1974) ........................................................................... 7

*United States v. Pimentel*,
 932 F.2d 1029 (2d Cir. 1991) .......................................................... 10

*United States v. Sineneng-Smith*,
 590 U.S. ____ (U.S. May 7, 2020) ................................................... 7

*Williams v. Pennsylvania*,
 136 S. Ct. 1899 (2016) ..................................................................... 11

*Williams-Yulee v. Fla. Bar*,
 575 U.S. 433 .................................................................................... 14

## Rules and Constitutional Provisions

U.S. Const., art. II, §1 ....................................................................... 1

U.S. Const., art. III, §1 .................................................................. 1, 7

U.S. Const., art. III, §2 ...................................................................... 7

Fed R. App. P. 29 ............................................................................... 2

Fed. R. Crim. P. 48 ............................................................................ 9, 10

**Other Authorities**

The Federalist No. 74 (A. Hamilton) (Cooke, ed., 1961) ..........................................4

Robert H. Jackson, *The Federal Prosecutor*, 31 Am. Inst. Crim. L. & Criminology 3 (1940) ..................................................................... 4, 5

## STATEMENT OF *AMICI* INTEREST AND SUMMARY OF ARGUMENT

"If to describe this case is not to decide it, the concept of a government of separate and coordinate powers no longer has meaning." *Morrison v. Olson*, 487 U.S. 654, 703 (1988) (Scalia, J., dissenting). Our Constitution vests the "executive power … in a President of the United States." U.S. Const., art. II, §1. That power includes the power to prosecute. But, just as important, it includes the power *not* to prosecute. *United States v. Armstrong*, 517 U.S. 456, 464 (1996). The judiciary has only the "judicial [p]ower," U.S. Const., art. III, §1, which includes only the power to resolve cases and controversies. Judges have no share of the executive power, and thus no say in the decision whether to prosecute.

What the Constitution has put asunder, let no judge join together. Here, the President, through his agents, has decided not to prosecute General Flynn. Yet the District Court has appointed an *amicus curiae* "to present arguments in opposition to the government's Motion to Dismiss"—implying that the court may order the prosecution to continue. Order Appointing *Amicus Curiae*, Doc. 205 (May 13, 2020). Courts may not order the commencement of any prosecution, and they may not order the continuation of what they cannot initiate. The District Court, in other words, has no power to do what it is doing.

The State Attorneys General who signed this brief are executive officers, who—like the United States Attorney General—oversee all or some of their States' prosecutorial functions. Some have significant experience prosecuting cases in court. Each understands the complex nature of the decision to pursue, or not to pursue, a criminal conviction. And each understands the importance of allowing prosecutors to make this decision—a decision that may well be immensely unpopular—free from judicial interference. This short brief, submitted under Rule 29(a)(2), will elaborate on the problems the District Court created by inserting itself into the Justice Department's exercise of prosecutorial discretion.

The Attorneys General have another interest, too. Recently, courts of appeals have been forced to issue writs of mandamus against district courts who arrogated to themselves, and then abused, immense power to which they had no valid claim. *See, e.g.*, *In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838 (6th Cir. 2020); *In re Rutledge*, 956 F.3d 1018 (8th Cir. 2020); *Doe v. Univ. of Mich. (In re Univ. of Mich.)*, 936 F.3d 460 (6th Cir. 2019). When mandamus is not a viable remedy, parties, including the States, may be forced to wait months or years before they can appeal an otherwise-interlocutory ruling that inflicts serious, irreparable harm. As the States often find themselves litigating in the District Court for the District of Columbia, they have a

strong interest in ensuring that this Court remains open to correct egregious, otherwise-unappealable abuses of power such as those at issue here.

## ARGUMENT

This Court should issue a writ of mandamus requiring the District Court to grant the government's motion to dismiss the information against General Flynn and to vacate its order appointing an *amicus curiae* prosecutor. While the *amici* States agree with General Flynn that his case should be assigned to a different district court judge, this brief does not address that aspect of his petition for a writ of mandamus.

I.   **The District Court is acting unconstitutionally by appointing an *amicus curiae* to prosecute General Flynn instead of granting the United States' motion to dismiss.**

When the United States moved to dismiss the criminal case against General Flynn, most assumed the case was over. After all, in our constitutional system, the judiciary cannot decide criminal cases that the executive declines to pursue. But instead of simply granting the United States' motion to dismiss, the District Court appointed an *amicus curiae* to oppose the motion. In essence, the District Court appointed a special prosecutor to carry on a prosecution against the wishes of the executive branch. The District Court acted unlawfully: the federal judiciary has no authority to mandate the pursuit (or continued pursuit) of a criminal conviction.

**A.    The decision to charge a crime is a critically important function, deliberately left to the executive branch alone.**

State and federal prosecutors have an awesome responsibility:  to decide whether to charge their fellow citizens with crimes, initiating a process that, if successful, will deprive another human being of his liberty.  The decision to charge is often a prosecutor's most-noticed act, but the most-consequential decision is often the decision *not* to pursue charges.  Our system depends on prosecutors' ability to make this decision unimpeded.

Consider first a practical point.  Every prosecutor swears an oath to uphold the law, but that cannot mean charging every criminal act.  "With the law books filled with a great assortment of crimes, a prosecutor stands a fair chance of finding at least a technical violation of some act on the part of almost anyone."  Robert H. Jackson, *The Federal Prosecutor*, 31 Am. Inst. Crim. L. & Criminology 3, 5 (1940).  Even technical or seemingly minor violations may carry severe penalties.  Thus, "without an easy access to exceptions in favor of unfortunate guilt, justice would wear a countenance too sanguinary and cruel."  The Federalist No. 74, at 501 (A. Hamilton) (Cooke, ed., 1961).

One such exception comes in the form of prosecutorial discretion.  In making the decision not to charge a crime, prosecutors may account for innumerable considerations.  For example, and relevant here, a prosecutor might validly decline to

pursue a conviction if investigators, instead of "discovering the commission of a crime and then looking for the man who has committed it," set about "picking the man and then searching the law books … to pin some offense on him." Jackson, *The Federal Prosecutor*, 31 Am. Inst. Crim. L. & Criminology at 5. More typically, a prosecutor will consider the deterrent effect a conviction would send; the community's legitimate interest in retribution; the harms a prison sentence would impose on the accused's family or community; and so on. In all cases, the prosecutor can account for case-specific factors—factors unknowable to a legislature promulgating generally applicable laws—that justify turning the other cheek.

The discretion not to charge a crime, in addition to being a practical necessity, is also a bulwark of liberty. Indeed, it is just as important to protecting liberty as the many procedural protections secured by the Bill of Rights and by state constitutions. As this Court recognized in speaking of the federal system (in an opinion by then-Judge Kavanaugh), one of the "greatest *unilateral* powers a President possesses under the Constitution, at least in the domestic sphere, is the power to protect individual liberty by essentially under-enforcing federal statutes regulating private behavior—more precisely, the power either not to seek charges against violators of a federal law or to pardon violators of a federal law." *In re Aiken Cty.*, 725 F.3d 255, 264 (D.C. Cir. 2013). The discretion not to pursue a charge serves as a vital check on

*legislative* authority. Before the government may take a citizen's liberty, it must identify an executive officer willing to bring charges. Prosecutorial discretion thus "operate[s] as an independent protection for individual citizens against the enforcement of oppressive laws that Congress may have passed (and still further protection comes from later review by an independent jury and Judiciary in those prosecutions brought by the Executive)." *Id.*

The same could be said about state prosecutors all around the country. State constitutions, like the federal constitution, protect liberty by dividing governmental power between co-equal branches and equipping each to check overreach by the others. *See, e.g.*, *Steen v. Appellate Div. of Superior Court*, 59 Cal. 4th 1045, 1059–60 (Cal. 2014) (Liu, J., concurring); *Alderson v. State*, 273 S.W.3d 533, 539 (Mo. 2009); *City of Norwood v. Horney*, 110 Ohio St. 3d 353, 386 (Ohio 2006). In these systems, as in the federal system, the power *not* to charge a crime is an important check that the executive branch may wield to protect against the legislature's excesses.

## B. Courts lack authority to exercise judgment over a decision that constitutionally belongs to the executive branch.

In this case, the federal government has exercised prosecutorial discretion, opting not to continue pursuing charges against General Flynn. Rather than simply granting the United States' motion to dismiss the information against General Flynn, the District Court delayed a ruling in an order that solicited *amicus* briefs from

"individuals and organizations."  Order of May 12, 2020.  It then took the further step of appointing an *amicus curiae* "to present arguments in opposition to the government's Motion to Dismiss."  Order Appointing *Amicus Curiae*, Doc. 205 (May 13, 2020).

There was no reason to issue these orders because the District Court has no say in the federal government's decision not to prosecute.  Simply put, the decision *not* to pursue a criminal conviction is vested in the executive branch alone—and neither the legislature nor the judiciary has any role in the executive's making of that decision.  "After enacting a statute, Congress may not mandate the prosecution of violators of that statute."  *Aiken Cty.*, 725 F.3d at 264.  And nothing in the judicial power—the power to decide concrete cases and controversies, *see* U.S. Const., Art. III, §§1, 2—permits courts to second-guess the executive branch's decision not to pursue a conviction.  *See United States v. Nixon*, 418 U.S. 683, 693 (1974); *Confiscation Cases*, 7 Wall. 454, 458–59 (1869).  Courts decide cases; they do not litigate them, as the Supreme Court reminded lower courts just a couple of weeks ago.  *See United States v. Sineneng-Smith*, 590 U.S. ____, slip op. 3 (U.S. May 7, 2020).

The District Court's assuming the role of a prosecutor evinces a total lack of regard for the role that the separation of powers plays in our system.  Before the federal government may deprive a citizen of his freedom, it must navigate a number

of hurdles.  It must find a law that the citizen violated, a prosecutor willing to press charges, a jury of other citizens willing to convict, *and a court to uphold the legality of the prosecution*.  In other words, the judiciary is supposed to function as a constitutional *check* on deprivations of liberty—it is not supposed to *remove* constitutional checks on deprivations of liberty.  But that is exactly what the District Court is doing by second-guessing the prosecutors' decision not to continue pursuing this case.

Worse still, the District Court's order calls for the views of *private* "individuals and organizations."  The Ancient Greeks, to be sure, sometimes put to a vote the question whether a citizen ought to be ostracized, or banished from society.  *United States v. Abushaar*, 761 F.2d 954, 959 (3d Cir. 1985).  But our Framers opted against the Greek model.  They put space between the People and the criminal process, including by vesting in the executive branch alone the power to decide whether to pursue state-sanctioned punishment.  The People will still have their say at the ballot box—they can vote out of office the President or the State Attorney General whose prosecutorial decisions they disagree with.  *See Aiken*, 725 F.3d at 266.  But the question of what the public thinks about the prosecution of General Flynn should have no bearing on the District Court's decision whether to grant leave to dismiss this case.

Criminal Rule 48(a), which requires a prosecutor to seek leave of the court when dismissing a case, does not change the analysis. In the context of a case like this—one where the government has decided not to prosecute a defendant—the rule gives courts the merely ministerial role of granting leave and dismissing the case. The rule provides:

> The government may, with leave of court, dismiss an indictment, information, or complaint. The government may not dismiss the prosecution during trial without the defendant's consent.

This rule is unconstitutional if it is applied to mandate the continued prosecution of a defendant the federal government has chosen *not* to prosecute. When applied in that manner, the ruling court exercises executive power, and thus exceeds the limits of Article III, which permits courts to exercise *only* the judicial power. So it is perhaps unsurprising that the Supreme Court, in describing the purpose of the leave-of-court requirement, explained that the requirement was never intended to be used to override the government's decision not to prosecute. "The principal object of the 'leave of court' requirement," the Court explained, was "apparently to protect a defendant against prosecutorial harassment, *e.g.,* charging, dismissing, and recharging, when the Government moves to dismiss an indictment over the defendant's objection." *Rinaldi v. United States*, 434 U.S. 22, 29 n.15 (1977). In other words, the rule exists to *stop* the government from engaging in abusive prosecution techniques.

Applied in that way, the rule is consistent with the judicial role: it gives courts a negative power to stop abusive prosecutions that are "clearly contrary to manifest public interest," *United States v. Pimentel*, 932 F.2d 1029, 1033 n.5 (2d Cir. 1991) (quoting *United States v. Cowan*, 524 F.2d 504, 513 (5th Cir. 1975)), but it does not confer a positive power to compel prosecutions. The judicial power includes the power to ensure that prosecutions comport with law; it does not, however, include the power to ensure that prosecutions occur in the first place. Here, the only reason to deny the government's motion would be to compel the prosecution of General Flynn. The Court has no power to do that.

Even aside from the separation-of-powers issues, there are insurmountable practical problems with using Rule 48(a) to mandate the continued prosecution of a defendant the government has decided not to pursue. First, suppose a court were to deny the prosecution's request. What would the prosecution, at that point, do? Presumably, if forced to litigate, it would stand up at trial and immediately rest its case without putting on evidence. Could the court avoid this outcome by appointing a special prosecutor and ordering the special prosecutor to continue prosecuting? No; once a court orders the prosecution, it aligns itself with the prosecution and can no longer serve as a neutral arbiter. "The due process guarantee that 'no man can be a judge in his own case' would have little substance if it did not disqualify a former

10

prosecutor from sitting in judgment of a prosecution in which he or she had made a critical decision," including the decision to charge. *Williams v. Pennsylvania*, 136 S. Ct. 1899, 1906 (2016). By ordering a court-appointed prosecutor to carry on with the prosecution of General Flynn, the District Court has, in essence, made the critical decision to charge a crime, disqualifying itself from presiding over General Flynn's case.

*

The District Court arrogated to itself the power to compel the prosecution of a defendant the executive branch has declined to prosecute. That is not just unconstitutional, it is anti-constitutional. When the executive branch decides not to prosecute, the proper role of the judiciary is to immediately grant the government's motion to dismiss. By failing to do so, and by instead appointing an *amicus curiae* to prosecute General Flynn, the District Court exceeded its lawful authority and undermined our constitutional order.

## II.   General Flynn is entitled to a writ of mandamus.

The Court should issue a writ of mandamus. More precisely, this Court should require the District Court to grant the government's motion to dismiss the information against General Flynn, and it should compel the District Court to vacate the order appointing an *amicus curiae* to oppose dismissal.

Courts will award a writ of mandamus in "exceptional circumstances." *Cheney v. United States Dist. Court*, 542 U.S. 367, 380 (2004). Such circumstances usually arise when a party establishes that (1) the "right to issuance of the writ is 'clear and indisputable,'" (2) the party has "no other adequate means to attain the relief" sought, and (3) "the writ is appropriate under the circumstances." *Id.* at 380–381 (internal quotation omitted). This standard is relaxed, however, in some contexts. For example, courts conduct basic, *de novo* error review when "the mandamus petition alleges the erroneous deprivation of a jury trial." *Cty. of Orange v. United States Dist. Court*, 784 F.3d 520, 526 (9th Cir. 2015); *see also Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 479 (1962). And when, as here, the "writ of mandamus is sought from an appellate court to confine a trial court to a lawful exercise of its prescribed authority," courts will issue the writ "almost as a matter of course." *In re Hot-Hed Inc.*, 477 F.3d 320, 323 (5th Cir. 2007) (*per curiam*) (quoting *In re Reyes*, 814 F.2d 168, 170 (5th Cir. 1987)).

Even if this Court views this mandamus petition through the prism of the three-factor standard announced in *Cheney*, it should grant the petition for a writ of mandamus. *First*, because federal courts have no constitutional authority to mandate or permit the continued prosecution of a defendant that the executive branch has decided not to charge, General Flynn has a "clear and indisputable" right to have

the information against him dismissed and the order appointing an *amicus curiae* prosecutor vacated.

*Second*, General Flynn has no other adequate means to attain this relief. While he may appeal any conviction, he cannot be spared the irreparable harm of being subjected to an unconstitutional, court-directed prosecution except through a writ of mandamus. Just as petitioners may seek mandamus relief to protect themselves from being tried by a biased judge or without a jury, *see Nichols v. Alley*, 71 F.3d 347, 352 (10th Cir. 1995); *Cty. of Orange*, 784 F.3d at 526, and just as even *civil* litigants may win mandamus relief to avoid compulsory participation in unlawfully ordered trials, *In re NLO*, 5 F.3d 154, 159 (6th Cir. 1993), General Flynn can seek mandamus relief here instead of waiting to challenge any conviction on appeal. At that point, the "unnecessary" "expense of compulsory participation in" the illegal prosecution would be "irremediable." *Id.*

*Finally*, the writ is appropriate to prevent the District Court's stunning abuse of Article III authority—an abuse that, if allowed to continue, will diminish the public confidence in the courts' ability to serve as neutral arbiters in politically sensitive cases. "The importance of public confidence in the integrity of judges stems from the place of the judiciary in the government. Unlike the executive or the legislature, the judiciary 'has no influence over either the sword or the purse; … neither force

nor will but merely judgment.'" *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 445(2015) (quoting The Federalist No. 78, at 465 (A. Hamilton) (C. Rossiter ed. 1961)). "The judiciary's authority therefore depends in large measure on the public's willingness to respect and follow its decisions." *Id*. at 445–46. Thus, when "partisan fevers grip the national government, the judiciary must operate as a non-partisan counterweight and" avoid becoming "part of the political scrum." *In re: Donald J. Trump*, — F.3d. —, No. 18-2486, slip op. 29 (4th Cir. May 14, 2020) (Wilkinson, J., dissenting). The District Court's failure to immediately dismiss this case, and its appointing an *amicus curiae* to oppose dismissal, thrusts the courts into the political scrum, leaving the public with the unfair perception that the judiciary is just another political combatant. For the good of the judiciary, this Court should intervene immediately.

## CONCLUSION

A judge who abandons the bench for the prosecutor's table can serve credibly in neither role. Just as the executive must respect the decisions the Constitution leaves to the judiciary, so must the judiciary respect the decisions the Constitution leaves to the executive—that is what gives meaning to the "concept of a government of separate and coordinate powers." *Morrison v. Olson*, 487 U.S. 654, 703 (1988) (Scalia, J., dissenting).

May 22, 2020                         Respectfully submitted,

STEVE MARSHALL
Attorney General of Alabama

KEVIN G. CLARKSON
Attorney General of Alaska

LESLIE RUTLEDGE
Attorney General of Arkansas        DAVE YOST
                                    Attorney General of Ohio

ASHLEY MOODY
Attorney General of Florida         */s/ Benjamin M. Flowers*
                                    BENJAMIN M. FLOWERS
CHRISTOPHER M. CARR                 Ohio Solicitor General
Attorney General of Georgia         30 E. Broad St., Floor 17
                                    Columbus, OH 43215
AARON NEGANGARD                     Tel:  614.466-43215
Chief Deputy Attorney General of    bflowers@ohioattorneygeneral.gov
Indiana

JEFF LANDRY
Attorney General of Louisiana       ALAN WILSON
                                    Attorney General of South Carolina

LYNN FITCH
Attorney General of Mississippi     KEN PAXTON
                                    Attorney General of Texas

ERIC SCHMITT
Attorney General of Missouri        SEAN D. REYES
                                    Attorney General of Utah

TIMOTHY C. FOX
Attorney General of Montana         PATRICK MORRISEY
                                    Attorney General of West Virginia

MIKE HUNTER
Attorney General of Oklahoma

# CERTIFICATE OF COMPLIANCE

**1.** This document complies with the word limit of Fed. R. App. P. 29(a)(5) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), G this document contains 3,288 words.

**2.** This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Equity type.

*/s/ Benjamin M. Flowers*
BENJAMIN M. FLOWERS
Ohio Solicitor General
30 E. Broad St., Floor 17
Columbus, OH 43215
614.466-43215
bflowers@ohioattorneygeneral.gov

**CERTIFICATE OF SERVICE**

I hereby certify that, on May 22, 2020, I electronically filed the foregoing with

the Clerk of the Court for the United States Court of Appeals for the D.C. Circuit

using the CM/ECF system. I further certify that I have served one copy of this brief

on each of the following individuals by UPS Overnight delivery:

Timothy Shea
United States Attorney for the District of Columbia
555 4th Street, N.W.
Washington, DC 20530

Judge Emmet G. Sullivan
United States District Court for the District of Columbia
333 Constitution Avenue, N.W.
Washington, D.C. 20001

John Gleeson
Debevoise & Plimpton LLP
919 Third Ave.
New York, NY 10022

/s/ Benjamin M. Flowers
BENJAMIN M. FLOWERS
Ohio Solicitor General
30 E. Broad St., Floor 17
Columbus, OH 43215
614.466-43215
bflowers@ohioattorneygeneral.gov