No. 20-5143

In the
United States Court of Appeals for the District of Columbia Circuit

_____

IN RE: MICHAEL T. FLYNN,
*Petitioner*
_____

On Petition for a Writ of Mandamus to the
United States District Court for
the District of Columbia

_____

Brief *Amicus Curiae* of
Former United States Attorney General Edwin Meese III
and Conservative Legal Defense and Education Fund
in Support of Petitioner

_____

WILLIAM J. OLSON*
JEREMIAH L. MORGAN
HERBERT W. TITUS
ROBERT J. OLSON
  WILLIAM J. OLSON, P.C.
  370 Maple Avenue W., Suite 4
  Vienna, VA  22180-5615
  (703) 356-5070
*Attorneys for Amici Curiae*

June 1, 2020
*Attorney of Record

## CERTIFICATE AS TO
## PARTIES, RULINGS, AND RELATED CASES

### Parties and *Amici*

Except for the following, all parties, intervenors, and *amici curiae* appearing before the district court below and this Court are listed in the Petition for a Writ of Mandamus and other *amicus* briefs: *amici curiae* former United States Attorney General Edwin Meese III and Conservative Legal Defense and Education Fund.

### Ruling under Review

References to the ruling at issue appear in the Petition for a Writ of Mandamus.

### Related Cases

Counsel adopt and incorporate by reference petitioner's statements with respect to related cases.

## CORPORATE DISCLOSURE STATEMENT

The *amicus curiae* herein, Conservative Legal Defense and Education Fund, through its undersigned counsel, submit this Corporate Disclosure Statement pursuant to Rules 26.1(b) and 29(c) of the Federal Rules of Appellate Procedure, and Rule 26.1 of the Rules of the United States Court of Appeals for the District of Columbia Circuit.

The *amicus curiae* is a non-stock, nonprofit corporation, which has no parent company, and no person or entity owns it or any part of it.

The *amicus curiae* is represented herein by William J. Olson, counsel of record, Jeremiah L. Morgan, Herbert W. Titus, and Robert J. Olson, of William J. Olson, P.C., 370 Maple Avenue West, Suite 4, Vienna, Virginia 22180-5615.

*/s/ William J. Olson*
William J. Olson

i

# TABLE OF CONTENTS

Interest of the *Amici Curiae* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Argument

I.  The Attorney General Has Responsibility for Ensuring
    that Criminal Charges Are Brought Only for Violations
    of Actual Federal Crimes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II. The Fourth and Fifth Circuits Have Reversed District Court
    Denials of Motions to Dismiss Charges after Guilty Pleas . . . . . . . . . 12

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

# TABLE OF AUTHORITIES

<u>Holy Bible</u>

*Deuteronomy* 1:17. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

<u>Statutes</u>:

*28 U.S.C. § 503 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
*28 U.S.C. § 509 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

<u>Rules</u>:

Rule 48, Federal Rules of Criminal Procedure. . . . . . . . . . . . . . . . . 12-15

<u>Cases</u>:

<u>Boykin</u> v. <u>Alabama</u>, 395 U.S. 238 (1969). . . . . . . . . . . . . . . . . . . . . . 14
<u>United States</u> v. <u>Fokker Servs., B.V.</u>, 818 F.3d 733 (D.C. Cir. 2016) . . . . . 12
*<u>United States</u> v. <u>Hamm</u>, 659 F.2d 624 (5th Cir. 1981) *(en banc)* . . . 11, 15, 16
*<u>United States</u> v. <u>Smith</u>, 55 F.3d 157 (4th Cir. 1995) . . . . . . . . . . . . . . 13-15

<u>Other Authorities</u>:

E. Meese III, "The Law of the Constitution," Tulane University
    (Oct. 21, 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
E. Meese III, "Robert H. Jackson, Public Servant," 68 ALBANY
    L. REV. 777 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7
R. Posner, <u>An Affair of State</u> (Harvard Univ. Press: 1999) . . . . . . . . . . . 9
J.S. Rakoff, "Why Innocent People Plead Guilty," *The New York
Review of Books* (Nov. 20, 2014) . . . . . . . . . . . . . . . . . . . . . . . . 9
J.A. Strazzella, Reporter, <u>The Federalization of Criminal Law</u>, American
    Bar Association Criminal Justice Section (1998). . . . . . . . . . . . . . . 8

\* Authorities Chiefly Relied Upon

**Interest of the *Amici Curiae***

Edwin Meese III served as the 75th Attorney General of the United States. He currently serves as the Ronald Reagan Distinguished Fellow Emeritus of the Meese Center for Legal and Judicial Studies at The Heritage Foundation.

Conservative Legal Defense and Education Fund is a not-for-profit organization incorporated in the District of Columbia, exempt from federal income taxation under Internal Revenue Code § 501(c)(3), which, *inter alia*, regularly files *amicus* briefs in important public policy cases.

These *amici* file this brief to offer additional views from Mr. Meese's experience as Attorney General, as well as *amici's* research and writing on related topics, relevant to this Court's consideration of the pending Petition for Mandamus.[1]

---

[1] No party or counsel for any party authored this brief in whole or in part or contributed funding to it or in connection with its preparation. No person other than these *amici* and their counsel contributed money to fund the preparation or submission of this brief.

## Statement of the Case

On Friday, December 1, 2017, District Judge Rudolph Contreras accepted a guilty plea from United States Army Lieutenant General Michael Flynn (Ret.) for making false statements to the FBI about his contacts with Russia shortly after the 2016 election. By Tuesday, December 5, 2017, without giving any reason, Judge Contreras recused, and the case was reassigned to District Judge Emmet G. Sullivan. During a December 18, 2018 sentencing hearing, Judge Sullivan accused General Flynn of selling out his country, implying that he had committed treason, only to attempt to walk back those accusations after a lunch break.

In June 2019, General Flynn engaged new counsel. On January 14, 2020, General Flynn filed a motion for leave to withdraw his guilty plea "because of the government's bad faith, vindictiveness, and breach of the plea agreement."

On January 29, 2020, General Flynn filed a Motion to Dismiss Case for Egregious Government Misconduct and in the Interest of Justice. That same month, Attorney General William P. Barr tasked Jeffrey Jensen, U.S. Attorney for the Eastern District of Missouri, to conduct a review of how the Flynn case had been handled by the Department of Justice. During the week of May 4,

2020, Jensen recommended to the Attorney General that the prosecution be dismissed. On Thursday, May 7, 2020, the Department of Justice moved to dismiss the charges with prejudice against Flynn.

On Monday, May 11, 2020, the *Washington Post* published an op-ed highly critical of the Department's May 7, 2020 motion, accusing the government of an attempt to corrupt Judge Sullivan and calling for the appointment of independent counsel to act as *amicus* on behalf of the court.

On Tuesday, May 12, 2020, the day after the *Washington Post* article appeared, Judge Sullivan said that he would allow third parties to weigh in on the Flynn case, and advised that he was proceeding under the provisions relating to *amicus* briefs in Local Civil Rules. He also stated that "at the appropriate time" he would set a schedule for interested parties to comment on the case.

Then, on Wednesday, May 13, 2020, just two days after the *Washington Post* op-ed, Judge Sullivan appointed the co-author of that article, retired District Judge John Gleeson, as *amicus curiae*: (i) to present the argument opposing the Department of Justice motion to dismiss, and (ii) to "address whether the Court should issue an Order to Show Cause why Mr. Flynn should not be held in criminal contempt for perjury."

On Tuesday, May 19, 2020, General Flynn filed a 44-page Emergency Petition for a Writ of Mandamus in this Court asking that: (i) the prosecution against General Flynn be dismissed as the Department of Justice had requested; (ii) the district court order appointing an *amicus curiae* be vacated; and (iii) the case in district court be reassigned from Judge Sullivan.

On Thursday, May 21, 2020, a three-judge panel from the D.C. Circuit issued an order requiring Judge Sullivan to respond in 10 days (*i.e.*, by June 1, 2020) addressing the petitioner's request and inviting the Department of Justice to respond "in its discretion within the same 10-day period" regarding whether Sullivan should be reassigned. The order requested Judge Sullivan to provide information regarding his decision not to immediately grant the DOJ request to dismiss the case against General Flynn.

## Argument

## I. THE ATTORNEY GENERAL HAS RESPONSIBILITY FOR ENSURING THAT CRIMINAL CHARGES ARE BROUGHT ONLY FOR VIOLATIONS OF ACTUAL FEDERAL CRIMES.

The Government's Motion to Dismiss ("Gov't Motion") filed in District Court, and two of the *amicus* briefs filed herein, have all cited former Attorney

General and Associate Justice of the U.S. Supreme Court Robert H. Jackson in support of opposing claims.

The Government's Motion to Dismiss cited Justice Jackson's famous April 1, 1940 address to U.S. Attorneys for the proposition that "the citizen's safety lies in the prosecutor who … seeks truth and not victims, who serves the law and not factional purposes, and who approaches [the] task with humility." Gov't Motion at 19. Supporting the Petition for Mandamus seeking dismissal, the *amicus* brief filed by the States of Ohio, *et al.* cited a 1940 law review article by Justice Jackson to describe the discretionary power of prosecutors: "With the law books filled with a great assortment of crimes, a prosecutor stands a fair chance of finding at least a technical violation of some act on the part of almost anyone." Ohio, *et al. Amicus* Brief at 4. That brief contrasted actions of government investigators "discovering the commission of a crime and then looking for the man who has committed it," with what it believes occurred here — "picking the man and then searching the law books … to pin some offense on him." *Id.* at 5.

Opposing the petition for mandamus, the *amicus* brief filed by the Watergate Group relied on a third 1940 quotation from Justice Jackson that the

safety of both citizens and of the Republic "'lies in the prosecutor who . . . serves the law and *not factional purposes*.'" Watergate Group *Amicus* Brief at 16.

This *amicus* brief offers some further thoughts on the lessons to be learned from Justice Jackson's guidance that can be applied to help decide this case. Long an admirer of Justice Jackson, in 2005, Attorney General Meese wrote a law review article entitled "[Robert H. Jackson, Public Servant](#)," 68 ALBANY L. REV. 777 (2005), which traced Jackson's illustrious career from trial attorney, to General Counsel of the Bureau of Revenue, to Assistant Attorney General for the Antitrust Division, to Solicitor General of the United States, and then, in 1940, being sworn in as our nation's 57th Attorney General, and his subsequent service as an Associate Justice of the U.S. Supreme Court, and Chief Prosecutor at the Nuremberg Trials following World War II.

During Justice Jackson's brief tenure as Attorney General, he made a lasting contribution to the Department of Justice in promoting fairness in the administration of justice and in protecting constitutional rights. In his Albany Law Review article, former Attorney General Meese identified the central lessons to be learned from Justice Jackson's April 1, 1940 remarks as follows:

Jackson recognized the power of the government lawyers sitting before him:  The prosecutor, he said, has more control over life, liberty, and reputation than any other person in America....  He pointed out the tremendous discretion that is held by the prosecutor in the ability to decide whether to investigate, order arrests, seek an indictment by a grand jury, present a case for trial or dismiss it, and even to make recommendations on sentencing and parole.  He went on to say that:  While the prosecutor at his best is one of the most beneficent forces in our society, when he acts from malice or other base motives, he is one of the worst.  [*Id*. at 18.]

Based on Justice Jackson's lessons, as amplified by subsequent developments, three observations are offered for the Court's consideration.

First, Justice Jackson's article articulated a principle that is applicable to the authority of the government to dismiss the case against General Flynn, when he identified among a federal prosecutor's powers — the decision to present a case for trial or dismiss it.

Second, Justice Jackson knew that those who wield this great prosecutorial power can, from time to time, act "from malice or other base motives."  If prosecutors can abuse their power, who has responsibility to correct that injustice?  Some of the *amicus* briefs filed herein erroneously would entrust that power exclusively in the federal judiciary.  In truth, in the first instance, that responsibility and power is vested in the Attorney General of the United States.  Although each federal prosecutor has a measure of authority to act for the United

States, "The Attorney General is the head of the Department of Justice." 28

U.S.C. § 503. Except with respect to certain discrete matters not involved here:

"All functions of other officers of the Department of Justice and all functions of

agencies and employees of the Department of Justice are vested in the Attorney

General…." 28 U.S.C. § 509. Here, the Attorney General assumed that duty,

tasked an experienced prosecutor with investigating the matter, and then took

decisive action to fulfil his duty with the filing of the government's motion to

dismiss.

Third, in the 44 years between the time Attorney General Jackson left that

office in 1941 and the time Attorney General Meese assumed that position in

1985, and even more since then, the power of the federal prosecutor has only

grown.[2] An experienced retired appellate federal judge explained the way the

federal criminal justice system now works that few could dispute:

---

[2] In 1998, former Attorney General Meese chaired a Task Force of the American Bar Association's Criminal Justice Section which reported on The Federalization of Criminal Law. That report, issued 22 years ago, found it impossible to determine exactly how many federal crimes could be prosecuted, but that several thousand were on the books. *Id.* at 2. Although the overwhelming number of prosecutions occurred at the state level, members of Congress found it increasingly difficult to resist the temptation to respond to each wrongdoing reported in the media by criminalizing more and more types of conduct, resulting in an explosion of new federal crimes. *Id.*

> The machinery of federal criminal investigation and prosecution, with its grand juries, wiretaps, DNA tests, bulldog prosecutors, pretrial detention, broad definition of conspiracy, heavy sentences (the threat of which can be and is used to turn criminals into informants against their accomplices), and army of FBI agents, is very powerful; there is a fear that fed enough time and money, it can nail anybody. There is some truth to this, since there are literally thousands of federal criminal laws, many of them at once broad, vague, obscure, and under enforced. [R. Posner, <u>An Affair of State</u> at 87 (Harvard Univ. Press: 1999).]

Of even more direct relevance here, Senior District Judge Jed S. Rakoff explained some of the reasons that people plead guilty:

> The … suggestion that a plea bargain is a fair and voluntary contractual arrangement between two relatively equal parties is a total myth:  it is much more like a "contract of adhesion" in which one party can effectively force its will on the other party…. [T]he prosecutor-dictated plea bargain system, by creating such inordinate pressures to enter into plea bargains, appears to have led to a significant number of defendants to plead guilty to crimes they never actually committed. [Jed S. Rakoff, "Why Innocent People Plead Guilty," *The New York Review of Books* (Nov. 20, 2014).]

This is what happened to General Flynn.  *See* Petition for Mandamus at 3 n.1 and 27 for a discussion of threats to prosecute his son.

While the prosecution of General Flynn was originated by a Special Counsel, the prosecution still was brought on behalf of the U.S. Department of Justice.  The Motion to Dismiss charges against General Flynn was filed by the United States Attorney for the District of Columbia, on the authority of the

Attorney General of the United States.  In that detailed, 20-page motion, the Department of Justice explained its view that General Flynn had actually pled guilty to a crime that did not exist since his statement was not "materially" false with respect to a matter under investigation, as required by the statute, as there was "no legitimate investigative basis."  Gov't Motion at 1-2.  That motion went on to detail improprieties within the FBI in the investigation and prosecution of General Flynn.  *Id*. at 3-10.  The motion was unusual but not extraordinary, as it was filed consistent with established Department protocols:

> Under the Principles of Federal Prosecution, the Government should not prosecute a defendant "unless the attorney for the government believes that the admissible evidence is sufficient to obtain and sustain a guilty verdict by an unbiased trier of fact."  Justice Manual 9-27.220.  [Motion to Dismiss at 12.]

In such a circumstance, it was the responsibility of the Attorney General to act in accord with the principles laid out by Justice Jackson to terminate a baseless prosecution in the interest of justice.

An *amicus* brief was filed by Lawyers Defending American Democracy ("LDAD"), an organization formed in 2019, whose first official action was to call for the resignation of Attorney General William Barr.  LDAD's brief asserted that the Flynn petition raised "grave rule of law issues[,] threaten[ing]

public confidence in the administration of justice that this and other Article III courts have sought to foster for more than two centuries." LDAD *Amicus* Brief at 1. This is a most remarkable claim for a court system whose job is to "say what the law is" and only, then, with respect to cases and controversies. The duty of courts is not to "foster public confidence," but to administer the law impartially. *See Deuteronomy* 1:17. If the courts do the latter, they will inspire the public's confidence. If courts aspire to do more, then law will become what the judges say it is, and that will lead the nation into judicial supremacy where the people are ruled by judges, not by the rule of law. LDAD seemingly would prefer a world without separation of powers, where the judicial process is the only way that justice may be administered and achieved.[3] *See* LDAD *Amicus* Brief at 5.

---

[3] Likewise, LDAD appears to believe that Judge Sullivan must conduct some evidentiary hearing before he rules on the motion to dismiss. But, as the Fifth Circuit noted, "If [*United States v. Ammidown*, 497 F.2d 615 (D.C. Cir. 1973)] is read to place the burden on the prosecutor to prove that dismissal is in the public interest, however, then it is contrary to our rule enunciated in *Cowan* and to the Supreme Court's holding in *Rinaldi*." United States v. Hamm, 659 F.2d 624, 631 n.23 (5th Cir. 1981) (*en banc*).

General Flynn's case illustrates how the discretionary acts of the Executive Branch can protect the constitutional rights of criminal defendants,[4] by means of prosecutorial discretion.

## II.   THE FOURTH AND FIFTH CIRCUITS HAVE REVERSED DISTRICT COURT DENIALS OF MOTIONS TO DISMISS CHARGES AFTER GUILTY PLEAS.

Both the Government's Motion to Dismiss and Petitioner's petition rely on this Court's decision in United States v. Fokker Servs., B.V., 818 F.3d 733 (D.C. Cir. 2016).  *See* Motion to Dismiss at 10-11; Petition at 1, 9-11, 17-21. This Court's May 21, 2020 order also cited that case in directing the district judge to respond to the petition.  Although that case did not directly address the precise situation where the government filed a Rule 48(a) motion to dismiss following a defendant's entry of a plea of guilty, two sister circuits have ruled on that precise issue.

The *amicus* brief of the Watergate Group places great emphasis on the fact that the Government's Motion to Dismiss was filed after the court had accepted

---

[4] "Each of the three coordinate branches of government created and empowered by the Constitution — the executive and legislative no less than the judicial — has a duty to interpret the Constitution in the performance of its official functions.  In fact, every official takes an oath precisely to that effect." *See* Edwin Meese III, "The Law of the Constitution," Tulane University (Oct. 21, 1986).

Petitioner's guilty plea, largely ignoring General Flynn's motion to withdraw that plea, as well as other motions, that were pending before the district court when the government filed its motion to dismiss. The Watergate Group argues that a court's duty under Rule 48(a) "depends on the procedural posture of a case." Watergate Group *Amicus* at 6. They claim that: "[a]fter a guilty plea has been accepted … judicial scrutiny of a Rule 48(a) motion is necessarily even more searching." *Id*. at 7. The Watergate Group goes further, claiming, without citations to authority, that accepting the guilty pleas "marks a criminal proceeding's transition from the domain" of the executive to the judiciary, and at that point, the "prosecution is complete." *Id*. As a consequence, the Watergate Group surmises that "granting a post-plea Rule 48(a) motion threatens several core Article III values." *Id*. at 8.

However, both the Fourth Circuit and the Fifth Circuit ordered district courts to grant a post-guilty plea Rule 48(a) motion without doing organic harm to the judiciary:

> The proper application of Rule 48(a) is illustrated in a case involving a motion to dismiss an indictment **after the defendant had pleaded guilty** and cooperated with the government. The **Fifth Circuit** reversed an order of the district court that denied the motion. Drawing on the principles explained in *Rinaldi*, 434 U.S. at 30, the court said: "Neither this court on appeal nor the trial court may

> properly reassess the prosecutor's evaluation of the public interest. As long as it is not apparent that the prosecutor was motivated by considerations clearly contrary to the public interest, his motion must be granted." *United States v. Hamm*, 659 F.2d 624, 631 (5th Cir. 1981) (*en banc*). [United States v. Smith, 55 F.3d 157, 160 (4th Cir. 1995) (emphasis added).]

In Smith, the Fourth Circuit found that the Government's Motion to Dismiss was based on "substantial, reasonable doubt about the guilt of a defendant that arose after conviction is evidence of good faith." *Id.*

The Watergate Group asserts that petitioner's guilty plea was the end of the matter for the Department of Justice, "after which 'nothing remains but to give judgment and determine punishment.'" Watergate Group *amicus* at 7 (quoting Boykin v. Alabama, 395 U.S. 238, 242 (1969)). However, here sentencing was delayed pending resolution of petitioner's Motion to Withdraw Plea of Guilty (filed January 14, 2020) and Motion to Dismiss Case for Egregious Government Misconduct and in the Interest of Justice (filed January 29, 2020). Although the government had opposed those motions, new Brady information not previously produced demonstrated to the U.S. Attorney that continuing the prosecution and sentencing of petitioner did not serve the public interest, as explained in its Rule 48(a) Motion to Dismiss.

At any time, the government either could have agreed to one or more of petitioner's pending motions, or alternatively, it could have filed a motion to dismiss, as it did, which could benefit the Department of Justice by mooting the pending motions.  (General Flynn agreed to file a motion to withdraw his pending motions to withdraw his plea and to dismiss for prosecutorial misconduct when the Government filed its the Rule 48(a) motion.[5])  Thus, at the time of the dismissal, the case was far from over and the U.S. Attorney had many decisions still to make about the case, especially now that the charges were being vigorously challenged by successor counsel.

As the Fifth Circuit summarized:  "Under the circumstances, direct dismissal of the indictments is proper.  Otherwise we would be using a roundabout method to accomplish what we now accomplish more simply:

---

[5]  The *amicus* brief of the former district court jurists argues that the government's change of position has resulted in "an unusual lack of adversity here."  *Amicus* Brief of Former Jurists at 4.  There are many times that the parties before a federal court are in agreement, such as occurs in every settlement of a civil case, or an agreement as to sentence in a criminal case. Indeed, the Fourth and Fifth Circuits found no problem in <u>Smith</u> and <u>Hamm</u>, even though the government supported the appeals of the defendants in those cases, and the courts of appeals saw no need to appoint *amicus* to argue against the defendants and the government.  Indeed, it is the lack of adversity which ends the "case" or "controversy" before it, and which divests the district court jurisdiction.

dismissal of the indictment." <u>United States</u> v. <u>Hamm</u>, 659 F.2d 624, 632 (5th Cir. 1981) (*en banc*).

## Conclusion

For the reasons stated in the Government's Motion to Dismiss, and the further reasons set out above, a writ of mandamus should issue, instructing the district court: to grant the Justice Department's Motion to Dismiss; to vacate the district court's order appointing *amicus curiae*; and to reassign the case to another district judge for any further proceedings as may be required.

Respectfully submitted,

*William J. Olson*

William J. Olson
Jeremiah L. Morgan
Herbert W. Titus
Robert J. Olson
WILLIAM J. OLSON, P.C.
370 Maple Avenue, W., Suite 4
Vienna, Virginia 22180
(703) 356-5070 (telephone)
(703) 356-5085 (fax)
wjo@mindspring.com

# CERTIFICATE OF COMPLIANCE

IT IS HEREBY CERTIFIED:

1.     That the foregoing File Brief *Amicus Curiae* of former United States Attorney General Edwin Meese III, *et al.*, in Support of Petitioner, complies with the type-volume limitation of Rule 29(a)(5), Federal Rules of Appellate Procedure, because this motion contains 3,528 words, excluding the parts of the petition exempted by Rule 32(f).

2.     This motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using WordPerfect version 18.0.0.200 in 14-point CG Times.

_____*/s/ William J. Olson*_____
William J. Olson
Attorney for *Amici Curiae*

Dated: June 1, 2020

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that service of the foregoing Brief *Amicus Curiae* of former United States Attorney General Edwin Meese III, *et al.*, in Support of Petitioner, was made, this 1st day of June, 2020, by the Court's Case Management/Electronic Case Files system upon the attorneys for the parties.

*/s/ William J. Olson*

_____

William J. Olson
Attorney for *Amici Curiae*