No. 20-5143

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

IN RE: MICHAEL T. FLYNN,

*Petitioner.*

On Petition for a Writ of Mandamus to the
United States District Court for the District of Columbia,
Case No. 1:17-cr-232.

## BRIEF OF MAJORITY LEADER MITCH MCCONNELL AND SENATORS TOM COTTON, MIKE BRAUN, KEVIN CRAMER, TED CRUZ, CHARLES E. GRASSLEY, AND RICK SCOTT AS *AMICI CURIAE* IN SUPPORT OF THE UNITED STATES OF AMERICA

ANDREW S. BOUTROS
DECHERT LLP
1900 K Street, N.W.
Washington, D.C. 20006
(202) 261-3300
andrew.boutros@dechert.com

MICHAEL H. MCGINLEY
MICHAEL CORCORAN
DECHERT LLP
2929 Arch Street
Philadelphia, PA 19104
(215) 994-4000
michael.mcginley@dechert.com
michael.corcoran@dechert.com

*Counsel for* Amici Curiae

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), the undersigned counsel certifies that:

**A. Parties and *Amici*:**  All parties, intervenors, and *amici* appearing before the District Court and this Court are listed in Michael T. Flynn's petition for a writ of mandamus, except that the following *amici* have filed motions or a notice of intent to participate as *amici*:  Majority Leader Mitch McConnell and Senators Tom Cotton, Mike Braun, Kevin Cramer, Ted Cruz, Charles E. Grassley, and Rick Scott; the States of Ohio, Alabama, Alaska, Arkansas, Florida, Georgia, Indiana, Louisiana, Mississippi, Missouri, Montana, Oklahoma, South Carolina, Texas, Utah, and West Virginia; John M. Reeves; 16 individuals who served on the Watergate Special Prosecution Force; Lawyers Defending American Democracy, Inc.; and former federal District Court jurists.

**B. Rulings Under Review:**  References to the rulings at issue appear in Michael T. Flynn's petition for a writ of mandamus.

**C. Related Cases:**  This case has not previously been before this court. Counsel is not aware of any other related cases within the meaning of D.C. Circuit Rule 28(a)(1)(C).

Dated: June 1, 2020

By: /s/ *Michael H. McGinley*
Michael H. McGinley

*Counsel for* Amici Curiae

# TABLE OF CONTENTS

Page(s)

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ............i

TABLE OF AUTHORITIES .................................................................... iii

STATEMENT OF INTEREST AND AUTHORITY TO FILE............................1

INTRODUCTION ..................................................................................2

ARGUMENT .......................................................................................2

I.  The Proceedings Below Conflict With Fundamental Separation of Powers Principles That This Court Has Recognized And Enforced .............2

    A.  The Framers Vested the Power to Initiate and Dismiss Prosecutions in the Executive Branch ...................................................3

    B.  This Court Enforced These Basic Principles in *United States v. Fokker Services*, Which is Dispositive Here .......................................6

II.  Congressional Actions Since The Founding Reinforce These Principles. ...................................................................................9

    A.  Congress Has Consistently Vested Prosecutorial Discretion in the Executive Alone ...................................................................10

    B.  The Proceedings Below Are Inconsistent With the Federal Rules of Criminal Procedure .............................................................11

III.  Mandamus Is Plainly Warranted Here .......................................13

CONCLUSION ..................................................................................16

# TABLE OF AUTHORITIES

**Cases**                                                                                                      **Page(s)**

*Abuelhawa v. United States*, 556 U.S. 816 (2009) ..................................................10

*Crawford v. Washington*, 541 U.S. 36 (2004) ........................................................13

*Dep't of Transp. v. Asso'c of Am. Railroads*, 575 U.S. 43 (2015) .........................15

*Edmond v. United States*, 520 U.S. 651 (1997) ......................................................11

*Ex parte Garland*, 71 U.S. (4 Wall.) 333 (1866) .....................................................4

*In re Aiken Cty.*, 725 F.3d 255 (D.C. Cir. 2013)...................................................3, 6

*In re United States*, 345 F.3d 450 (7th Cir. 2003) ..................... 3, 6, 8, 9, 12, 13, 15

*In re United States*, 398 F.3d 615 (7th Cir. 2005) ..............................................9, 16

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ......................................................4

*Mapp v. Ohio*, 367 U.S. 643 (1961).......................................................................12

*Mempa v. Rhay*, 389 U.S. 128 (1967).....................................................................15

*Morrison v. Olson*, 487 U.S. 654 (1988) ...............................................................10

*N.Y. State Rifle & Pistol Ass'n, Inc. v. City of New York*,
    140 S. Ct. 1525 (2020)......................................................................................14

*Newman v. United States*, 382 F.2d 479 (D.C. Cir. 1967)....................................7, 8

*Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211 (1995) ..............................................3

*Rinaldi v. United States*, 434 U.S. 22 (1977)................................................... 11, 12

*Stern v. Marshall*, 564 U.S. 462 (2011).....................................................................6

*Swan v. Clinton*, 100 F.3d 973 (D.C. Cir. 1996) ...................................................15

*United States v. Ammidown*, 497 F.2d 615 (D.C. Cir. 1973) .................................12

*United States v. Bass*, 404 U.S. 336 (1971)...........................................................12

*United States v. Batchelder*, 442 U.S. 114 (1979)....................................................8

*United States v. Cowan*, 524 F.2d 504 (5th Cir. 1975).......................................9, 15

*United States v. Flores*, 912 F.3d 613 (D.C. Cir. 2019) .........................................15

*United States v. Fokker Services B.V.*,
    818 F.3d 733 (D.C. Cir. 2016)..................................................... 2, 4, 6, 7, 8, 11

*United States v. Klein*, 80 U.S. 128 (1871)...............................................................6

*United States v. Microsoft Corp.*, 56 F.3d 1448 (D.C. Cir. 1995)............................8

*United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950) ........................................14

*United States v. Nixon*, 418 U.S. 683 (1974) .........................................................8

*United States v. Sineneng-Smith*, 140 S. Ct. 1575 (2020) .......................................4

*Wayte v. United States*, 470 U.S. 598 (1985) ..........................................................7

*Zivotofsky v. Kerry*, 135 S. Ct. 2076 (2015) ..........................................................6

## Statutes

1 Stat. 73 (1789)........................................................................................................10

16 Stat. 162 (1870)....................................................................................................10

28 U.S.C. § 501 .........................................................................................................10

28 U.S.C. § 515 .........................................................................................................10

28 U.S.C. § 516 .................................................................................................. 10, 14

Pub. L. 95-521 (1978) ........................................................................................ 10, 11

## Other Authorities

10 Annals of Cong. (1800)..........................................................................................5

Akhil Reed Amar, AMERICA'S CONSTITUTION: A BIOGRAPHY (2005) ....................3

Peter L. Markowitz, *Prosecutorial Power at Its Zenith: The Power to Protect Liberty*, 97 B.U. L. REV. 489 (2017) ........................................................................5

Saikrishna Prakash, *The Chief Prosecutor*, 73 GEO. WASH. L. REV. 521 (2005)............................................................ 5, 6, 10

The Federalist No. 47 (Madison) ................................................................... 2, 5, 12

The Federalist No. 78 (Hamilton)...............................................................................5

*The Future of the Independent Counsel Act: Hearings Before the S. Comm. on Gov't Affairs*, 106 Cong. 1 (1999), *available at* https://bit.ly/3d6Z3jK .............11

## Rules

Fed. R. Crim. P. 32....................................................................................................15

Fed. R. Crim. P. 48....................................................................................................11

## Treatises

3B WRIGHT & MILLER, FED. PRAC. & PROC. § 802 (2020) ......................................14

## <u>Constitutional Provisions</u>

U.S. CONST. art. II ....................................................................................3, 4

U.S. CONST. art. III...................................................................................4

## STATEMENT OF INTEREST AND AUTHORITY TO FILE[1]

*Amici curiae* are seven U.S. Senators, one of whom is the Senate Majority Leader, two of whom sit on the Senate Judiciary Committee, and three of whom sit on the Senate Armed Services Committee.  As members of a coordinate branch of government, they have a unique perspective on the constitutional issues raised in this case and the interpretation of laws enacted by Congress.  *Amici* file this brief to provide practical, constitutional, and historical context to the legal issues at stake and to offer their insights regarding the separation of powers that define our system of government.

Pursuant to Circuit Rule 29(d), counsel for *amici curiae* hereby certify that it is not practicable to file a joint *amicus curiae* brief with other potential *amici* and that it is necessary to file a separate brief regarding the Senators' unique perspectives.  Because no party either consents to or opposes the filing of *amici*'s brief, *amici* have filed a motion to file their brief pursuant to Federal Rule of Appellate Procedure 29(a).

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(a), *amici curiae* state that no counsel for any party authored this brief in whole or in part, and no entity or person, aside from *amici curiae*, their members, and their counsel, made any monetary contribution intended to fund the preparation or submission of this brief.

## INTRODUCTION

Ours is a government of three limited branches, each "separate and distinct from each other."  The Federalist No. 47 (Madison).  That constitutional structure preserves liberty by dividing authority amongst the branches and prohibiting each from intruding on the others' exclusive powers.  As part of that design, the Constitution vests the power to prosecute—and the corresponding power to *stop* prosecuting—solely with the Executive Branch.  The text, original understanding, and structure of the Constitution all confirm that fact, which this Court reaffirmed four years ago in *United States v. Fokker Services B.V.*, 818 F.3d 733, 738 (D.C. Cir. 2016).  And Congress' legislative actions since the Founding reinforce these fundamental truths.  The Federal Rules of Criminal Procedure cannot override the Constitution's framework, and nothing in those Rules allows a court to take the prosecutorial reins or to appoint a private party to step into the prosecution's shoes.  Because the proceedings below conflict with the Constitution, the laws passed by Congress, and the Federal Rules, this Court should grant mandamus and order the indictment's dismissal.

## ARGUMENT

### I.    The Proceedings Below Conflict With Fundamental Separation Of Powers Principles That This Court Has Recognized And Enforced.

The separation of powers is essential to our system of government and the Constitution's primary safeguard of individual liberty.  *See, e.g.*, *Plaut v. Spendthrift*

*Farm, Inc.*, 514 U.S. 211, 217-25 (1995). Although ascertaining the structure and allocation of each branch's authority might sometimes prove difficult, here the answer is clear: The Executive has the exclusive discretion to begin and to end a prosecution. The Judiciary, for its part, has the power to decide cases or controversies. Just as the Executive cannot direct the Judiciary's rulings, the Judiciary cannot direct the Executive's prosecutorial decisions. This Court has enforced those principles before, and it should do so again here.

### A. The Framers Vested the Power to Initiate and Dismiss Prosecutions in the Executive Branch.

The Executive's exclusive power over prosecutorial decisions is plain from the text of the Constitution and the history of our Nation. Article II's Vesting Clause provides that "[t]he executive Power shall be vested" in the President. U.S. CONST. art. II, § 1. The Take Care Clause delegates to the Executive the responsibility to "take Care that the Laws be faithfully executed." *Id.* art. II § 3. And the Pardon Clause grants the President the sole power to issue pardons and reprieves for offenses against the United States. *Id.* art. II § 2. Each of these powers is inextricably intertwined with prosecutorial discretion: the power to prosecute is the power to execute laws, and the refusal to prosecute is subsumed in the "greater power to pardon." *In re Aiken Cty.*, 725 F.3d 255, 262-64 (D.C. Cir. 2013) (Kavanaugh, J.) (quoting Akhil Reed Amar, AMERICA'S CONSTITUTION: A BIOGRAPHY 179 (2005)); *see also In re United States*, 345 F.3d 450, 454 (7th Cir. 2003) ("[A] judge could not

possibly win a confrontation with the executive branch over its refusal to prosecute, since the President has plenary power to pardon a federal offender, U.S. CONST. art. II, § 2, cl. 1—even before trial or conviction.") (citing *Ex parte Garland*, 71 U.S. (4 Wall.) 333, 380 (1866)).

For its part, the Judiciary is vested with "the judicial Power of the United States." U.S. CONST. art. III, § 1. That power extends only to "Cases" or "Controversies," and includes no power to *initiate* or *perpetuate* a case or controversy. *Id.* art. III § 2; *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559-60 (1992). Courts are thus "essentially passive instruments of government"—they do not "sally forth each day looking for wrongs to right." *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) (citation omitted). In short, the enumerated powers of Articles II and III point to one inescapable conclusion: "Decisions to initiate charges, *or to dismiss charges once brought*, lie at the core of the *Executive's* duty to see to the faithful execution of the laws." *Fokker*, 818 F.3d at 741 (emphases added, citation and internal quotations omitted).

The Founders recognized as much in both their words and their deeds. Chief Justice John Marshall, while serving in Congress, described prosecutorial discretion as "'an indubitable and a Constitutional power' which permitted [the President] *alone* to determine . . . when to pursue and when to forego prosecutions." Peter L. Markowitz, *Prosecutorial Power at Its Zenith: The Power to Protect Liberty*, 97

- 4 -

B.U. L. REV. 489, 497 (2017) (emphasis added) (quoting 10 Annals of Cong. 596, 615 (1800)).   Speaking directly to the issue here, then-Congressman Marshall concluded that "the President . . . may rightfully . . . enter a *nolle prosequi*, or direct that the criminal be prosecuted no further."   10 Annals of Cong. at 615.   The Federalist Papers likewise explained that, while the Executive "holds the sword of the community," the Judiciary "can take no active resolution whatever" because it has "neither Force nor Will, but merely judgment."   The Federalist No. 78 (Hamilton).   Although individual liberty has "nothing to fear from the judiciary alone," it has "every thing to fear" from the union of the judicial and executive powers—which is a recipe for "tyranny."   *Id.*; The Federalist No. 47 (Madison).

Prosecutorial practices of the first Administrations confirm this understanding.   Indeed, "prosecutorial discretion was an uncontroversial power of the President from the start."   Markowitz, *Prosecutorial Power at Its Zenith*, 97 B.U. L. REV. at 497.   Presidents Washington, Adams, and Jefferson all exercised the power to direct "district attorneys to begin *and cease* prosecutions in a number of contexts."   Saikrishna Prakash, *The Chief Prosecutor*, 73 GEO. WASH. L. REV. 521, 553 (2005) (emphasis added).   For example, President Adams dropped the prosecution of a "sympathetic" defendant, and President Jefferson ordered an end to all prosecutions under the Sedition Act.   *Id.* at 559-61.   "Far from doubting the [P]resident's power, the other two branches" agreed with these practices.   *Id.* at 553,

564.  Thus, at the Founding, the prevailing view was that prosecutorial decisions were "outside the scope of the judicial power."  *Id.* at 568-69.

This understanding is also consistent with the fundamental structure of our government.  The Constitution carefully delineates the powers of each branch to safeguard liberty by "assur[ing] that no one can be convicted of a crime without the conrence of all *three* branches."  *In re United States*, 345 F.3d at 454 (emphasis added).  But "[w]hen a judge assumes the power to prosecute, the number shrinks to two."  *Id.*  Although "the three branches are not hermetically sealed from one another," the *sine qua non* of the separation of powers is that no branch may intrude on the core powers vested in another.  *E.g.*, *Stern v. Marshall*, 564 U.S. 462, 483 (2011); *Zivotofsky v. Kerry*, 135 S. Ct. 2076, 2094-96 (2015).  For example, the Judiciary cannot enact laws any more than Congress can rule on individual cases.  *E.g.*, *United States v. Klein*, 80 U.S. 128, 146-47 (1871).  So too, the Executive cannot convict criminals any more than the Judiciary can prosecute them.  *See In re Aiken Cty.*, 725 F.3d at 264.

## B.  This Court Enforced These Basic Principles in *United States v. Fokker Services*, Which is Dispositive Here.

These principles are not new to this Court, which enforced them without dissent only four years ago in *Fokker*, 818 F.3d at 738.  In that case, this Court issued a writ of mandamus when a district court denied the government's request to suspend the Speedy Trial Act's time limits pending a proposed Deferred Prosecution

Agreement's compliance review period. *Id.* at 737-38. As this Court explained, the Act confers "no authority in a court" to deny such a motion based on disagreements about the charges brought or foregone—*even though* the Act requires the "approval of the court" to suspend its time limits. *Id.* at 738. That holding is dispositive here: the District Court has "no authority" to deny the Government's motion to dismiss even if it disagrees with it. *Id.*

*Fokker*'s reasoning is directly on-point. As the Court explained, "[t]he Executive's primacy in criminal charging decisions is long settled" and "stems from the Constitution's delegation of 'take Care' duties and the pardon power." *Id.* at 741 (citations omitted). By contrast, the Judiciary's authority is "at its most limited" when reviewing charging decisions, which by their nature involve judgment calls that the courts are "not 'competent to undertake.'" *Id.* (quoting *Wayte v. United States*, 470 U.S. 598, 607 (1985)). "'Judicial supervision in this area' would also 'entail[] systemic costs.'" *Id.* Indeed, "'[f]ew subjects are less adapted to judicial review than the exercise by the Executive of his discretion in deciding when and whether to institute criminal proceedings, or what precise charge shall be made, or whether to dismiss a proceeding once brought.'" *Id.* (quoting *Newman v. United States*, 382 F.2d 479, 480 (D.C. Cir. 1967)). If the courts could intrude on this core prosecutorial function, nothing would stop them from interfering with other key prosecutorial decisions such as whether to grant immunity or trigger mandatory-

minimum sentences.  That is why the government's charging and dismissal decisions "are for the Executive—not the courts—to make."  *Id.* at 738.[2]

*Fokker* stood on strong doctrinal footing.  As this Court and the Supreme Court have held, time and again, prosecutorial discretion is a core executive function, not subject to judicial review.  *E.g.*, *United States v. Batchelder*, 442 U.S. 114, 124 (1979); *United States v. Nixon*, 418 U.S. 683, 693 (1974); *Newman*, 382 F.2d at 480.  Indeed, even where the Tunney Act directs courts to act "in the public interest" when reviewing an antitrust consent decree, this Court has held that the district court's "authority to review the decree depends entirely on the government's exercising its prosecutorial discretion by bringing a case in the first place."  *United States v. Microsoft Corp.*, 56 F.3d 1448, 1459-60 (D.C. Cir. 1995).  And the courts have no authority to second-guess the Executive's decision not to pursue the prosecution further.  *See Fokker*, 818 F.3d at 744.

Other Circuits have reached the same conclusion.  For example, the Seventh Circuit issued a writ of mandamus when a judge refused to grant the government's

---

[2] "To be sure, a 'district judge is not obliged to accept' a proposed decree 'that, on its face and even after government explanation, appears to make a mockery of judicial power,'" *Fokker*, 818 F.3d at 743 (citation omitted), or that stems from unlawful discrimination, *In re United States*, 345 F.3d at 453.  But those "limits [are] found in the Constitution and thus do not include 'bad faith' and 'against the public interest.'"  *Id.*  In all events, no such issues are present here.  And, even in those rare circumstances, the court's action would *protect* defendants' rights, not place them in further jeopardy.

motion to dismiss charges because the judge thought the prosecution should go forward. *In re United States*, 345 F.3d at 453 ("The judge . . . is playing U.S. Attorney."). In another decision, the Seventh Circuit issued a writ of mandamus against a judge who had ordered the Justice Department to investigate its own staff and report to him. *In re United States*, 398 F.3d 615, 618-19 (7th Cir. 2005). The reasoning in both cases supports *Fokker*'s holding: It is critical "to maintain separation between executive and judicial roles, and between the formulation and evaluation of positions in litigation" because "[o]ur legal system does not contemplate an inquisitorial role for federal judges." *Id.* at 618-19. Because "the authorized powers of federal judges do not include the power to prosecute crimes," courts cannot refuse to dismiss a charge when the Executive so moves. *In re United States*, 345 F.3d at 452. As the Fifth Circuit has held, courts are "constitutionally powerless to compel the government to proceed." *United States v. Cowan*, 524 F.2d 504, 511 (5th Cir. 1975).

## II. Congressional Actions Since The Founding Reinforce These Principles.

These foundational principles are the bedrock of our Republic. They are only reinforced by Congress' statutory enactments dating back to the Founding and by Rule 48 itself. Both confirm that the Executive has been vested with the exclusive authority to begin and end prosecutions.

### A. Congress Has Consistently Vested Prosecutorial Discretion in the Executive Alone.

Since the Founding, Congress has consistently vested prosecutorial powers in the Executive alone. The Judiciary Act of 1789 first established the Office of the Attorney General and the district attorneys. 1 Stat. 73, 92-93 (1789). As explained above, the first three Administrations exercised prosecutorial discretion without controversy. Prakash, *The Chief Prosecutor*, 73 GEO. WASH. L. REV. at 553. As a result, Congress "legislates against a background assumption of prosecutorial discretion." *Abuelhawa v. United States*, 556 U.S. 816, 823 n.3 (2009).

For example, Congress established the Department of Justice as "an executive department" in 1870. 16 Stat. 162 (1870); 28 U.S.C. § 501. In that Act, Congress vested the Attorney General with the exclusive power to initiate criminal cases. 28 U.S.C. § 515. And Congress explicitly provided that "the conduct of litigation" in which the United States is a party is "reserved" to the Attorney General and the Department of Justice. *Id.* § 516. Simply put, Congress has not granted the Judiciary any authority to prosecute federal crimes (as opposed to contempt of court).

Moreover, when Congress has intended the Judiciary to play a role in prosecution, it has said so explicitly. In 1978, Congress created an "Independent Counsel" with prosecutorial powers, removable by the Attorney General only for cause. *See* Pub. L. 95-521, §§ 594, 596 (1978); *Morrison v. Olson*, 487 U.S. 654, 661-64 (1988). Even then, the statute provided that the Judiciary would appoint the

Independent Counsel only upon the request of the Attorney General.  *See* Pub. L. 95-521, § 592.  And, when that statute was set to expire in 1999, a bipartisan majority of Congress decided to let it lapse.  *See The Future of the Independent Counsel Act: Hearings Before the S. Comm. on Gov't Affairs*, 106 Cong. 1 (1999), *available at* https://bit.ly/3d6Z3jK.

### B.    The Proceedings Below Are Inconsistent With the Federal Rules of Criminal Procedure.

The Federal Rules of Criminal Procedure do not allow the proceedings below. Although Rule 48(a) requires "leave of court" before dismissing a prosecution, this Court has held that the "leave of court" clause is "narrow," and serves only to "*protect* a defendant against prosecutorial harassment."  *Fokker*, 818 F.3d at 742 (emphasis added) (quoting *Rinaldi v. United States*, 434 U.S. 22, 29 n.15 (1977) (per curiam)).  It does not grant district courts the prerogative "to deny a prosecutor's Rule 48(a) motion . . . based on a disagreement" with the prosecution's charging decisions.  *Id.*  Nor could it:  Any other reading of Rule 48 would render it unconstitutional by intruding on the Executive's "core prerogative to dismiss criminal charges."  *Id.* at 743.  Especially because the natural reading of the Rule would avoid any constitutional concerns, the Court should follow that reading.  *See Edmond v. United States*, 520 U.S. 651, 658 (1997).  If nothing else, the rule of lenity compels that any ambiguity be resolved in favor of the defendant.  *See United States*

*v. Bass*, 404 U.S. 336, 348 (1971). Rule 48 is designed to *protect* defendants, not keep them in prolonged jeopardy.

No court has ever held to the contrary. The fleeting suggestion that the "leave of court" clause might entail a public-interest inquiry in much earlier decisions was loose *dicta*, and those cases invariably ordered district courts to dismiss prosecutions on the government's motion. *See, e.g.*, *Rinaldi*, 434 U.S. at 29 n.15; *United States v. Ammidown*, 497 F.2d 615, 620 (D.C. Cir. 1973). Despite the "speculations in some judicial opinions" of a public-interest inquiry, *amici* are aware of no "appellate decision that actually upholds a denial of a motion to dismiss a charge on such a basis." *In re United States*, 345 F.3d at 453. "That is not surprising" because the Constitution "places the power to prosecute in the executive branch." *Id.* And, in all events, *Fokker* decisively rejected any such role for the courts.

Moreover, that understanding comports with the Constitution's fundamental purpose to preserve individual liberty. *See* The Federalist No. 47 (Madison). The Bill of Rights is replete with provisions that protect personal freedoms at the expense of the public interest. To take two obvious examples, the Fourth Amendment's Warrant Requirement and the Sixth Amendment's Confrontation Clause elevate individual defendants' rights over the "public good" of convicting the guilty. *See Mapp v. Ohio*, 367 U.S. 643, 659 (1961) ("The criminal goes free, if he must, but it is the law that sets him free. Nothing can destroy a government more quickly than

its failure to observe its own laws, or worse, its disregard of the charter of its own existence."); *Crawford v. Washington*, 541 U.S. 36, 62 (2004) ("Dispensing with confrontation because testimony is obviously reliable is akin to dispensing with jury trial because a defendant is obviously guilty. This is not what the Sixth Amendment prescribes."). The same is true of the right against self-incrimination, the right to a jury trial, the speedy trial right, and the right to an attorney, just to name a few. Against the backdrop of this foundational principle of the American criminal justice system, Rule 48(a) does not empower courts to keep defendants in perpetual peril whenever the courts disagree with the Executive's decision to dismiss a prosecution.

Nor do Rule 42's criminal contempt procedures permit a court to perpetuate a prosecution. "The theory behind the [contempt] exception is that the judiciary should not be dependent on the executive to assure compliance with its orders; but no judicial order was flouted in this case." *In re United States*, 345 F.3d at 452. Instead, by refusing to dismiss, the court "was telling the government which crimes to prosecute," which it is not permitted to do. *Id.*

## III.    Mandamus Is Plainly Warranted Here.

A writ of mandamus is necessary to uphold these critical constitutional principles. The lower court's refusal to grant the motion to dismiss and its decision to instead appoint a private party to step into the prosecution's shoes as an *amicus* is inconsistent with the Constitution, the laws adopted by Congress, and the Federal

Rules of Criminal Procedure. And the extraordinary sequence of events that would ensue from those actions only underscores the need for immediate appellate intervention. To allow the possibility of such an experiment to proceed below would have grave consequences, which this Court should halt now.

To start, allowing the District Court to proceed would raise serious Article III case-or-controversy issues. Because the defendant and the government have both moved to dismiss this prosecution, there is no remaining dispute. *See United States v. Munsingwear, Inc.*, 340 U.S. 36, 39-40 (1950). The fact that General Flynn previously pled guilty and otherwise faces sentencing makes no difference, for a case or controversy must be present throughout the course of litigation. *See id.*; *N.Y. State Rifle & Pistol Ass'n, Inc. v. City of New York*, 140 S. Ct. 1525, 1526 (2020). Indeed, courts have routinely held that the standard for a Rule 48(a) dismissal is the same either before trial or at sentencing. *See* 3B WRIGHT & MILLER, FED. PRAC. & PROC. § 802 & n.16 (2020) (collecting cases).

Moreover, allowing this case to proceed to sentencing would raise the unconstitutional specter of a criminal defendant being sentenced with the judge assuming the dual role as court and prosecutor. The District Court cannot appoint an *amicus* to assume the role of the prosecution because that would constitute an unconstitutional delegation to a private party and would flout Congress' deliberate legislative decision to deny courts that power. *See* 28 U.S.C. § 516; *Dep't of Transp.*

- 14 -

*v. Asso'c of Am. Railroads*, 575 U.S. 43, 50-51 (2015); *see also In re United States*, 345 F.3d at 454 (Courts cannot "appoint a prosecutor.").  Nor can the District Court force the prosecution to prosecute.  *Cf. Swan v. Clinton*, 100 F.3d 973, 978 (D.C. Cir. 1996); *see also Cowan*, 524 F.2d at 511.  Thus, if this case proceeds to sentencing, the defendant will appear in court, ready to be sentenced—with the District Court itself as the only government official standing against him.

That result would not only violate the separation of powers, but would undermine the entire design of a sentencing hearing.  Sentencing hearings are not merely an event for the judge to *issue* a sentence, having received all the input needed from the government.  Instead, sentencing is a critical stage of the criminal process.  *See Mempa v. Rhay*, 389 U.S. 128, 137 (1967); Fed. R. Crim. P. 32(i)(4).  Nor is the prosecution a potted plant—it presents the government's recommendation and speaks to contested issues.  *See* Fed. R. Crim. P. 32(i)(4)(iii).  The judge's sentence and factual findings are then subject to appellate review, during which the prosecution obviously plays a role.  *Cf. United States v. Flores*, 912 F.3d 613, 618 (D.C. Cir. 2019).  And, given the government's motion to dismiss and the basis proffered for it (Dkt. 198), the government's earlier-filed sentencing papers presumably no longer reflect its position.  Thus, any sentencing here—where the prosecution and defense *agree* that the case should be dismissed—could not possibly

resemble the proceedings that are required, and would ignore the fact that no live controversy remains.

*     *     *

In any routine case, the application of these fundamental principles would be obvious and straightforward. And they do not yield in high-profile, sensitive prosecutions. If anything, the opposite: In such cases, it is all the more important that the judiciary turn square corners and not intrude on other branches' constitutional authority. The rule of law and our constitutional order apply equally to all. That is why this Court should intervene in the proceedings below to provide prompt and decisive relief. Indeed, a "swift end to this contretemps will allow calmer reflection and . . . a restoration of the cordial and mutually respectful relations between bench and prosecutor that are vital to the administration of justice." *In re United States*, 398 F.3d at 620.

## CONCLUSION

The mandamus petition should be granted.

Dated: June 1, 2020                                 Respectfully submitted,

                                                    By:  /s/ *Michael H. McGinley*

ANDREW S. BOUTROS                                   MICHAEL H. MCGINLEY
DECHERT LLP                                         MICHAEL CORCORAN
1900 K Street, N.W.                                 DECHERT LLP
Washington, D.C. 20006                              2929 Arch Street
(202) 261-3300                                      Philadelphia, PA 19104
andrew.boutros@dechert.com                          (215) 994-4000
                                                    michael.mcginley@dechert.com
                                                    michael.corcoran@dechert.com

                *Counsel for* Amici Curiae

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 29(a)(5), Fed. R. App. P. 32(a)(2), and D.C. Cir. Rule 32(e)(3) because it contains 3,887 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the type-face requirements and the type-style requirements of Fed. R. App. P. 32(a)(4)-(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

# CERTIFICATE OF SERVICE

I hereby certify that, on June 1, 2020, I electronically filed the foregoing Brief of Majority Leader Mitch McConnell and Senators Tom Cotton, Mike Braun, Kevin Cramer, Ted Cruz, Charles E. Grassley, and Rick Scott as *Amici Curiae* In Support of the United States of America with the Clerk of the United States Court of Appeals for the District of Columbia Circuit by using the electronic CM/ECF system, and served copies of the foregoing via the Court's CM/ECF system on all ECF-registered counsel.

Dated: June 1, 2020                    By: /s/ *Michael H. McGinley*
                                              Michael H. McGinley
                                              DECHERT LLP
                                              2929 Arch Street
                                              Philadelphia, PA 19104
                                              (215) 994-4000
                                              michael.mcginley@dechert.com

                                              *Counsel for* Amici Curiae