# IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

In re: Michael T. Flynn, petitioner

———————————

On Petition For A Writ Of Mandamus
To The U.S. District Court For The District Of Columbia

———————————

## REPLY BRIEF FOR THE UNITED STATES

———————————

NOEL J. FRANCISCO
  *Solicitor General*

BRIAN A. BENCZKOWSKI
  *Assistant Attorney General*

JEFFREY B. WALL
ERIC J. FEIGIN
  *Deputy Solicitors General*

FREDERICK LIU
VIVEK SURI
  *Assistants to the Solicitor General*
  *U.S. Department of Justice*
  *Washington, D.C. 20530*

MICHAEL R. SHERWIN
  *Acting United States Attorney*

KENNETH C. KOHL
  *Acting Principal Assistant United*
  *States Attorney*

JOCELYN BALLANTINE
  *Assistant United States Attorney*
  *555 Fourth Street, NW, Room 11-858*
  *Washington, D.C. 20530*
  *(202) 252-7252*

# TABLE OF CONTENTS

Page

ARGUMENT ............................................................................. 1

I.  Respondent's Rationales For Reviewing The Exercise Of
    Prosecutorial Discretion Lack Merit .................................................... 1

II. Respondent Has Failed To Identify Any Valid Basis For Initiating
    Its Own Investigation And Prosecution Of Petitioner For Criminal
    Contempt ............................................................................. 9

III. Respondent's Objections To Mandamus Relief Lack Merit ................. 11

CONCLUSION ............................................................................ 19

# TABLE OF AUTHORITIES

Page

**Cases:**

*Association of Am. Physicians & Surgeons v. Clinton*, 997 F.2d 898
(D.C. Cir. 1993) ................................................................. 15

*Bessette v. W. B. Conkey Co.*, 194 U.S. 324 (1904).......................... 10

*Bond v. United States*, 564 U.S. 211 (2011) ................................... 18

*Bronsozian v. United States*, No. 19-6220, 2020 WL 1906543
(U.S. Apr. 20, 2020) ............................................................ 4

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) .......................... 10, 11

*Cheney v. U.S. District Court*, 542 U.S. 367 (2004) ............... 13, 14, 16

*ICC v. Brotherhood of Locomotive Eng'rs*, 482 U.S. 270 (1987) ........... 8

*McCray v. United States*, 195 U.S. 27 (1904) ............................. 6, 13

**Michael*, In re*, 326 U.S. 224 (1945)......................................... 10

*Morrow v. District of Columbia*, 417 F.2d 728 (D.C. Cir. 1969) ........ 14

*Parr v. United States*, 351 U.S. 513 (1956) ................................. 14

*Republic of Venezuela v. Philip Morris Inc.*, 287 F.3d 192
(D.C. Cir. 2002) ................................................................. 16

*Richards*, In re*, 213 F.3d 773 (3d Cir. 2000)........................... 16, 17

**Rinaldi v. United States*, 434 U.S. 22 (1977) ................................. 4

*Stone*, In re*, 940 F.3d 1332 (D.C. Cir. 2019)............................... 16

*Thompson v. United States*, 444 U.S. 248 (1980) ............................. 4

*United States*, In re*, 345 F.3d 450 (7th Cir. 2003).................... 2, 5, 6

---

\*       Authorities upon which we chiefly rely are marked with asterisks.

# TABLE OF AUTHORITIES—Continued

Page

*United States v. Ammidown*, 497 F.2d 615 (D.C. Cir. 1973) ......................... 4, 5

*United States v. Cowan*, 524 F.2d 504 (5th Cir. 1975) ................................... 4, 5

*\*United States v. Fokker Servs. B.V.*, 818 F.3d 733
(D.C. Cir. 2016) .................................................................1, 2, 3, 13, 15

*United States v. Hamm*, 659 F.2d 624 (5th Cir. Unit A Oct. 1981)................. 4, 5

*United States v. Marion*, 404 U.S. 307 (1971) .................................................. 14

*United States v. Sineneng-Smith*, 140 S. Ct. 1575 (2020) ................................. 18

*Virginia House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945 (2019) ..................... 4

*Wayte v. United States*, 470 U.S. 598 (1985) .............................................14, 15

## Constitution, Statute, and Rules:

U.S. Const. art. I.............................................................................................. 6

*U.S. Const. art. II.............................................................1, 6, 12, 15, 16

U.S. Const. art. II, § 3 ...................................................................................... 13

*U.S. Const. art. III ......................................................... 1, 4, 11, 13, 16, 18

*18 U.S.C. § 401(1) ................................................................................10, 11

Fed. R. Crim. P. 11 ........................................................................................... 2

Fed. R. Crim. P. 48 ...................................................................................... 3, 5

*Fed. R. Crim. P. 48(a) .......................... 2, 4, 5, 6, 7, 13, 16, 17, 19

## Other Authorities:

*The Federalist No. 70* (Alexander Hamilton) (Jacob E. Cooke ed., 1961) ........ 14

**TABLE OF AUTHORITIES—Continued**

Page

John Gleeson et al., *The Flynn Case Isn't Over Until the Judge Says It's Over*, Wash. Post (May 11, 2020), www.washingtonpost.com/opinions/ 2020/05/11/flynn-case-isnt-over-until-judge-says-its-over ....................... 12

U.S. Dep't of Justice, *Justice Manual* (2020) ................................................... 8

# ARGUMENT

## I. Respondent's Rationales For Reviewing The Exercise Of Prosecutorial Discretion Lack Merit

1. Respondent's brief opposing mandamus says almost nothing about the serious separation-of-powers concerns here. Respondent nowhere acknowledges that, under Article II, the power to drop pending criminal charges belongs to the Executive, not the Judiciary. Quite the opposite, respondent asserts the power to determine whether the Executive's exercise of prosecutorial discretion really serves "legitimate prosecutorial interests." Opp. 23 (citation omitted). Respondent also nowhere acknowledges that, under Article III, a federal court has no basis for exercising judicial power once the parties no longer have any live controversy. Quite the opposite, respondent considers the end of adversity to be a "breakdown in the adversarial process" that justifies *increased* judicial involvement. Opp. 29.

To the extent respondent and its amici address Article II at all, they read *United States v. Fokker Services B.V.*, 818 F.3d 733 (D.C. Cir. 2016), to mean that the Executive controls the decision "whether to *commence* prosecution"—but not whether to terminate a pending prosecution, especially after a guilty plea. Opp. 24 (emphasis added); *see, e.g.*, Watergate Prosecutors Br. 9. *Fokker*'s reasoning repeatedly refutes that reading. This Court explained that "[t]he Executive's charging authority embraces decisions about … *whether to dismiss charges once*

*brought*"; that courts may not "second-guess the Executive's exercise of discretion over the … *dismissal* of criminal charges"; that "[d]ecisions … *to dismiss charges once brought*[] 'lie at the core of the Executive's duty'"; that "'few subjects are less adapted to judicial review than … [the decision] *whether to dismiss a proceeding once brought*'"; that "*decisions to dismiss pending criminal charges … lie squarely within the ken of prosecutorial discretion*"; that Federal Rule of Criminal Procedure 48(a) "concerns the prosecution's core prerogative *to dismiss* criminal charges"; and that the Judiciary "lack[s] … competence to review the prosecution's … *dismissal* of charges." *Fokker*, 818 F.3d at 737-738, 741-744 (emphases added; brackets and citations omitted). Respondent's contrary view would contract the Constitution's protection of individual liberty, by qualifying its "assur[ance] that no one can be convicted of a crime without the concurrence of all three branches." *In re United States*, 345 F.3d 450, 454 (7th Cir. 2003).

Respondent is right (Opp. 24) that *Fokker* distinguished between a deferred prosecution agreement (DPA) or a dismissal under Rule 48(a) and a plea agreement under Federal Rule of Criminal Procedure 11. But respondent misses the point of the distinction, which is that "[u]nlike a plea agreement—and more like a dismissal under Rule 48(a)—a DPA involves no formal judicial action imposing or adopting its terms." *Fokker*, 818 F.3d at 746. When the Executive enters into a DPA or obtains dismissal under Rule 48(a), "[t]he court never

exercises its coercive power by entering a judgment of conviction or imposing a sentence." *Id.* The government's motion here thus involves only "the Executive's traditional power over charging decisions," not "the Judiciary's traditional authority over sentencing decisions." *Id.* Just as in *Fokker*, the government's motion does not require respondent to undo any judicial judgment or to exercise any sentencing authority. Opp. 25-26.

Respondent and amici further err in suggesting that the Executive's interest in conserving "limited 'prosecution resources'" expires upon a guilty plea. Watergate Prosecutors Br. 8 (citation omitted); *see* Opp. 25. As this case well illustrates, a case does not end upon the acceptance of the guilty plea. Petitioner has pending motions to withdraw his plea and to dismiss the prosecution, sentencing has not been completed, and appellate and collateral review await. Those proceedings would require expenditure of prosecution resources, and it is up to the Executive to decide whether that expenditure is warranted.

More generally, respondent and amici are incorrect that dismissal following a guilty plea somehow intrudes upon the Judiciary's powers. Opp. 25; *see, e.g.*, Watergate Prosecutors Br. 6. A judgment becomes final for separation-of-powers purposes upon the completion of direct review—not upon the entry of a guilty plea. U.S. Br. 25. It is therefore settled that Rule 48 may

be used to dismiss a prosecution at any time before trial and appellate proceedings have ended, and Article III compels that conclusion because it "demands that an 'actual controversy' persist throughout all stages of litigation." *Virginia House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1951 (2019) (citations omitted). The Supreme Court itself has ordered dismissal where the government's "motion was not made until after the trial had been completed." *Rinaldi v. United States*, 434 U.S. 22, 25 (1977) (per curiam). Even in cases where the Solicitor General has determined that Justice Department policies require dismissal after a judgment has been entered and affirmed on appeal, the Supreme Court "has consistently responded … by granting certiorari and vacating the judgments" to permit dismissal under Rule 48(a). *Thompson v. United States*, 444 U.S. 248, 249 (1980) (per curiam); *see, e.g.*, *Bronsozian v. United States*, No. 19-6220, 2020 WL 190653, at *1 (U.S. Apr. 20, 2020).

2. Respondent lacks any persuasive answer to *Fokker*, which is "the law in this Circuit and district courts must follow it." Opp. 24. Respondent and amici instead cite various cases they believe favor their reading of Rule 48(a)— principally, *United States v. Ammidown*, 497 F.2d 615 (D.C. Cir. 1973), *United States v. Hamm*, 659 F.2d 624 (5th Cir. Unit A Oct. 1981) (en banc), and *United States v. Cowan*, 524 F.2d 504 (5th Cir. 1975). In none of those cases, however, did an appellate court actually affirm the denial of an unopposed Rule 48(a)

motion; for example, *Ammidown* involved the rejection of a plea agreement rather than a dismissal, and explained that "Rule 48(a) does not apply as such to the case at bar." 497 F.2d at 619-620. Like the Seventh Circuit, the government is "unaware … of *any* appellate decision that actually upholds a denial of [an unopposed] motion to dismiss a charge." *In re United States*, 345 F.3d at 453 (emphasis added). Any statements in those cases about a court's authority to scrutinize unopposed Rule 48(a) motions are thus dicta.

In addition, the dicta are ambiguous on their own terms. In *Ammidown*, this Court emphasized that "it has traditionally been the prosecutor who determines which case will be pressed to conclusion" and that "trial judges are not free to withhold approval … merely because their conception of the public interest differs from that of the prosecuting attorney." 497 F.2d at 621-622. In *Hamm*, the court acknowledged that "the trial court cannot compel the prosecutor to proceed with the prosecution." 659 F.2d at 632. And in *Cowan*, the court acknowledged the necessity of reading Rule 48 in a manner that avoids "encroaching on the primary duty of the Executive to take care that the laws are faithfully executed." 524 F.2d at 512-513. To the extent those opinions elsewhere suggest that district courts may play a broader role in evaluating Rule 48(a) motions, such statements are inconsistent with *Fokker* and numerous

subsequent Supreme Court decisions reiterating the Executive's authority over charging decisions. *See* U.S. Br. 19 (citing cases).

3. Even assuming a district court may ever deny an unopposed motion to dismiss, no court has endorsed a standard as broad as respondent's, which asks whether the Executive "acted properly" or was motivated by "favoritism." Opp. 22, 28 (citations omitted); *see, e.g.*, Jurists Br. 10; *cf.* U.S. Br. 20-21. Absent a constitutional violation, courts lack authority to restrain the exercise of a coordinate branch's constitutional powers "on the assumption that a wrongful purpose or motive has caused the power to be exerted." *McCray v. United States*, 195 U.S. 27, 56 (1904). It would violate Article II to disregard a prosecutorial dismissal or presidential pardon on the ground that the Executive was motivated by "favoritism" toward the defendant, just as it would violate Article I to disregard a statute on the ground that Congress was motivated by "favoritism" toward special interests. *In re United States*, 345 F.3d at 453. At most, courts may determine that a Rule 48(a) motion reflects the considered position of the Executive. Respondent has not questioned the government's motion on that ground.

Respondent also fails to explain how its contrary view of Rule 48(a) would work in practice. Courts lack any effective mechanism to compel the Executive to take a prosecution to trial—even if they believe that the refusal to prosecute

rests on an improper motive. The absence of any such means of enforcement confirms that Rule 48(a)'s leave-of-court requirement serves a different interest—namely, to protect defendants from dismissals without prejudice, not to encourage broad judicial inquiries into whether unopposed dismissals serve the public interest.

In any event, respondent offers no valid reason why the government's motion here was insufficient. Respondent notes that the motion was signed by the Acting U.S. Attorney rather than line prosecutors. Opp. 15. But whenever the government decides to dismiss, it has necessarily changed its view of the propriety of prosecution—which may lead those who previously advanced the opposite position to withdraw for reasons that do not necessarily connote disagreement. What matters is that the motion represents the authoritative position of the Executive, which the signature of a high-ranking official confirms. Respondent also suggests that the thoroughness of the government's explanation—spanning "20 pages of largely factual argument"—indicates that something is awry, while simultaneously criticizing the government for not attaching additional "declarations or affidavits." *Id.* The government's extensive explanation amply satisfies any procedural requirement that the Executive recount its reasons. And the government has no obligation to persuade the district court—through the submission of evidence—that it has

correctly assessed the interests of justice and the strength of the charges. U.S. Br. 15-16.

Turning to the substance of the government's motion, respondent finds even less to criticize. Respondent's primary complaint (Opp. 14, 16) is that the government's arguments about materiality contradict its prior view that the information was material. But as the government has explained, its view that proving materiality would be difficult was based on the cumulative weight of evidence that came out over the course of time, and was not informed by petitioner's broad allegations of prosecutorial misconduct. U.S. Br. 21-23; Doc. 198, at 18. After assessing all the evidence, including additional information about the investigation and extensive impeaching materials that had emerged about key witnesses since the time of the plea, *see* U.S. Br. 2-8, 23, the government determined that it would have been unlikely to obtain a guilty verdict from an unbiased trier of fact and should not rely on the plea. *See* U.S. Dep't of Justice, *Justice Manual* § 9-27.200 cmt. (2020).

Respondent suggests (Opp. 28) that the government should have cited more case law on materiality. First, that criticism misunderstands a district court's role: "it is entirely clear" that a prosecutor's "refusal to prosecute" based on the belief "that the law will not sustain a conviction … cannot be the subject of judicial review." *ICC v. Brotherhood of Locomotive Eng'rs*, 482 U.S. 270, 283

(1987).  Second, even if the government's evidence would meet the standard of legal sufficiency, the government determined that the evidence as a whole was unlikely to convince an actual jury to find guilt beyond a reasonable doubt. Third, respondent disregards the government's alternative and independent reasons for dismissing the prosecution:  the interests-of-justice concern given the circumstances surrounding the FBI's interview of petitioner, and the difficulties in proving willfully false statements.  *See* U.S. Br. 21-23.  Those reasons alone amply support the government's decision to dismiss.  *Id.*

Finally, respondent criticizes the government for failing to address petitioner's 2017 statements relating to his work for Turkey.  Opp. 15, 28.  But petitioner was not charged for those statements.  Doc. 1, at 1-2.  Accordingly, whatever the strength of those allegations in light of subsequent developments, they do not support continued prosecution of the charges here.  An inquiry into those uncharged statements would second-guess the government's refusal "to commence prosecution," something even respondent recognizes is impermissible.  Opp. 24.

## II. Respondent Has Failed To Identify Any Valid Basis For Initiating Its Own Investigation And Prosecution Of Petitioner For Criminal Contempt

Respondent contends that, even if dismissal is granted, further proceedings are necessary to determine whether the court should bring criminal-

contempt charges against petitioner. Opp. 33; *see* App. 77. Respondent, however, is silent on the long line of Supreme Court precedent establishing that perjury, in itself, is not criminal contempt under 18 U.S.C. § 401(1). U.S. Br. 29. Respondent does not explain how, even if petitioner committed perjury, that conduct satisfies the elements of "actual obstruction" and "intent to obstruct" under Section 401(1). *Id.* at 28-30 (brackets and citations omitted). Nor does respondent explain why, even if such conduct could be considered contempt, the authority to prosecute petitioner does not lie with the Executive. *Id.* at 30-31. Nor, finally, does respondent explain why, if petitioner could be prosecuted for contempt by the court, any defendant who pleads guilty and later asserts his innocence could not likewise be prosecuted.

Respondent asserts (Opp. 34) that courts have the "inherent power" to punish contempt in order to "preserv[e] … the truth-seeking process." But "the exercise of the inherent power of lower federal courts can be limited by statute." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 47 (1991). Here, Section 401(1) "limit[s]" a court's "inherent" power to punish contempt. *Bessette v. W. B. Conkey Co.*, 194 U.S. 324, 326 (1904). And it is well established that perjury, in itself, is not punishable under Section 401(1), regardless of whether it "may produce a judgment not resting on truth." *In re Michael*, 326 U.S. 224, 227 (1945). Accordingly, there is no valid "basis" for respondent to "'conduct

investigations'" into whether "the representations in [petitioner's] January 2020 declaration are true" and whether "they present attenuating circumstances for his prior, contrary statements." Opp. 34-35 (citation omitted).

Respondent nevertheless contends that *Chambers* "uph[eld] [a] court's inherent authority to punish 'acts which degrade the judicial system, including … misleading and lying to the Court.'" Opp. 33-34 (citation omitted). But *Chambers* concerned a court's authority to impose civil litigation sanctions, not criminal punishment. 501 U.S. at 40. The quoted language also comes not from the Supreme Court's holding, but from a lower court's decision describing the conduct that an attorney's-fee statute "was not broad enough to reach." *Id.* at 41. And respondent offers no support at all for the novel and intrusive factual "investigations" it contemplates conducting. Opp. 35 (citation omitted). Because the court could not prosecute petitioner under Section 401(1) even if he had committed perjury, such additional factfinding would serve no purpose— other than to burden the parties, delay this case's end, and usurp power beyond Article III limits.

## III. Respondent's Objections To Mandamus Relief Lack Merit

1. Respondent and amici argue that, regardless of whether dismissal ultimately must be granted, mandamus is premature now because the district court has not yet ruled on the government's motion. *See, e.g.*, Opp. 18-21; NYC

Bar Ass'n Br. 4-7. The court, however, has already set the table for wide-ranging judicial superintendence of the Executive's decision to terminate petitioner's prosecution. Respondent's brief contemplates a process of "factual … development," Opp. 29; an examination of the Executive's "bona fides," *id.* (citation omitted); a review of "declarations [and] affidavits," Opp. 15; an investigation into whether the "line prosecutors" agreed with the "then-Acting U.S. attorney," *id.*; and an inquiry into whether the Executive's decision serves "due and legitimate prosecutorial interests," Opp. 23 (citation omitted).

On top of all that, respondent appointed as amicus a lawyer who has opined that the government's motion "reeks of improper political influence." John Gleeson et al., *The Flynn Case Isn't Over Until the Judge Says It's Over*, Wash. Post. (May 11, 2020), www.washingtonpost.com/opinions/2020/05/11/ Flynn-case-isnt-over-until-judge-says-its-over. In a brief filed today, the amicus doubles down on that charge, urging the district court to examine the prosecutors' subjective motives and to determine whether the Executive has engaged in "politically motivated" conduct "to benefit a political ally of the President." Doc. 223, at 3.

Such ongoing judicial supervision of the Executive's charging decision warrants mandamus given the stark separation-of-powers concerns. Under Article II, it is the President—not the Judiciary—who must "take Care" that

prosecutors exercise their powers "faithfully" and in the public interest. U.S. Const. art. II, § 3. This Court accordingly explained in *Fokker* that district courts lack power "*to scrutinize* the prosecution's discretionary charging decisions"; that the Executive may exercise "authority over criminal charging decisions … *without the involvement of—and without oversight power in—the Judiciary*"; that Rule 48(a) "confers no new power in the courts *to scrutinize* … the prosecution's exercise of its traditional authority"; that courts lack authority "*to scrutinize* prosecutorial charging choices"; that charging decisions "are ill-suited to substantial *judicial oversight*"; and that courts err by "subject[ing] [charging decisions] to *judicial scrutiny*." 818 F.3d at 741, 743-744, 750 (emphases added). In short, respondent's intended inquiry would be an "act of judicial usurpation," *McCray*, 195 U.S. at 54, for which mandamus is a traditional remedy, *see Cheney v. U.S. District Court*, 542 U.S. 367, 380 (2004).

Likewise, as explained, any judicial extension of the case after there is no longer a controversy between the parties exceeds the court's Article III jurisdiction. Courts of appeals have long issued extraordinary writs— traditionally, the writ of prohibition, but in modern times, the writ of mandamus—"to prevent an encroachment, excess, usurpation, or assumption of jurisdiction on the part of an inferior court" or "to bring a lower court back

within its jurisdiction." *Morrow v. District of Columbia*, 417 F.2d 728, 733 (D.C. Cir. 1969).

In these extraordinary circumstances, the district court's prolongation of the prosecution also threatens petitioner's rights in a manner that warrants mandamus. The initiation and continuation of a criminal prosecution "may seriously interfere with the defendant's liberty, … disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends." *United States v. Marion*, 404 U.S. 307, 320 (1971). The Supreme Court has made clear that such harms do not justify mandamus relief in a typical case, *Parr v. United States*, 351 U.S. 513, 519-521 (1956), but they do when combined with "exceptional circumstances amounting to a judicial usurpation of power," *Cheney*, 542 U.S. at 390 (citation omitted).

"Judicial supervision in this area, moreover, entails systemic costs of particular concern." *Wayte v. United States*, 470 U.S. 598, 607 (1985). First, "[e]xamining the basis" of a prosecutor's decision "delays" that decision's implementation. *Id.* Such delay contradicts the Framers' understanding that the Executive would act with "[d]ecision, activity, secrecy, and dispatch." *The Federalist No. 70*, at 472 (Alexander Hamilton) (Jacob E. Cooke ed., 1961). Second, "subjecting the prosecutor's motives and decisionmaking to outside

14

inquiry" "threatens to chill law enforcement." *Wayte*, 470 U.S. at 607. That chilling effect, in turn, "impair[s] the performance of a core executive constitutional function." *Fokker*, 818 F.3d at 741 (citation omitted). Third, under Article II, the Executive "is entitled to confidentiality in the performance of [its] responsibilities … and in the process of shaping policies and making decisions." *Association of Am. Physicians & Surgeons v. Clinton*, 997 F.2d 898, 909 (D.C. Cir. 1993) (citations and internal quotation marks omitted). Judicial scrutiny of charging decisions "may undermine prosecutorial effectiveness by revealing the Government's enforcement policy." *Wayte*, 470 U.S. at 607. Finally, judicial supervision in this area threatens the Judiciary itself. The court-appointed amicus seeks to initiate a judicial examination into accusations that the Executive's decision is "politically motivated," Doc. 223, at 30, and such a politically charged examination in a judicial forum imperils the Judiciary's own reputation.

If accepted, respondent's view would invite examination of dismissal decisions and prosecutorial motives—complete with amicus participation and evidentiary development—in not only this case, but others. Such examination would undermine core separation-of-powers principles and have damaging practical consequences. It would regularly require the Executive to reveal sensitive strategic considerations and factual information, even when it chooses

to drop a prosecution specifically to protect classified information, pending investigations, or other core Executive concerns. "Accepted mandamus standards are broad enough … to prevent a lower court from interfering with a coequal branch's ability to discharge its constitutional responsibilities," *Cheney*, 542 U.S. at 382, and mandamus is thus entirely appropriate here.

2. Respondent's contrary arguments lack merit. Respondent is incorrect (Opp. 19) that *In re Stone*, 940 F.3d 1332 (D.C. Cir. 2019), and *Republic of Venezuela v. Philip Morris Inc.*, 287 F.3d 192 (D.C. Cir. 2002), support denying mandamus. In *Stone*, this Court denied mandamus directing a district court to change a defendant's conditions of pretrial release, 940 F.3d at 1336, while in *Philip Morris*, the Court denied mandamus prohibiting a district court from remanding a case to state court, 287 F.3d at 199. Neither case involved an ongoing violation of the separation of powers.

Respondent's reliance (Opp. 19) on *In re Richards*, 213 F.3d 773 (3d Cir. 2000), is similarly misplaced. In *Richards*, the Third Circuit denied mandamus to a petitioner challenging a district court's decision to "schedule[] a hearing to explore further the underlying facts" rather than grant the government's Rule 48(a) motion. *Id.* at 776. But the Third Circuit considered only the common-law doctrine of *nolle prosequi*, not any Article II and III concerns. And the court denied mandamus only because it was "unaware of any binding precedent"

precluding such a hearing.  *Id.* at 788.  Here, unlike in *Richards*, there *is* binding precedent—namely, *Fokker*—making clear that district courts lack the power to oversee the Executive's exercise of prosecutorial discretion.  Indeed, *Fokker* granted mandamus based on separation-of-powers concerns alone, without any prior precedent directly on point.  *A fortiori*, mandamus is warranted here, where the Court is faced with the same constitutional concerns *and* its decision in *Fokker*.

Moreover, without considering the constitutional backdrop, the Third Circuit in *Richards* characterized Rule 48(a) "as a 'sunshine' provision that exposes the reasons for prosecutorial decisions."  213 F.3d at 788.  The court recognized that "ordering a hearing on the facts … took [the trial judge] to the outer limits of his authority."  *Id.* at 789 n.9.  And the court warned the trial judge that it "strongly doubt[ed] that a refusal to dismiss would be justifiable" and that, "[s]hould he deny the motion on remand, or refuse to rule promptly one way or another," it would entertain a fresh mandamus petition.  *Id.*  Here, the district court has gone far beyond a simple hearing by appointing an amicus, contemplating additional factual development, and even proposing new criminal charges.  Mandamus thus is appropriate here, regardless of whether it was in *Richards*.

Finally, respondent errs in analogizing (Opp. 29-30) its order to the appointment of amici in cases where the prevailing party declines to defend the judgment below. In such cases, there remains an Article III controversy because the appellant, aggrieved by the judgment below, has standing to appeal and the prevailing party retains an "ongoing interest" in the underlying dispute. *Bond v. United States*, 564 U.S. 211, 217 (2011) (citation omitted). Here, there is no longer any Article III controversy at all; appointing an amicus thus serves to create a new controversy, not to help resolve an existing one. Mandamus is necessary to put an end to the district court's "takeover" of this case. *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1581 (2020).

# CONCLUSION

This Court should issue a writ of mandamus directing the district court to grant the government's motion under Rule 48(a) to dismiss the information.

Respectfully submitted,

NOEL J. FRANCISCO
*Solicitor General*

BRIAN A. BENCZKOWSKI
*Assistant Attorney General*

JEFFREY B. WALL
ERIC J. FEIGIN
*Deputy Solicitors General*

FREDERICK LIU
VIVEK SURI
*Assistants to the Solicitor General*
*U.S. Department of Justice*
*Washington, D.C. 20530*

JUNE 2020

MICHAEL R. SHERWIN
*Acting United States Attorney*

KENNETH C. KOHL
*Acting Principal Assistant United*
*States Attorney*

*/s/ Jocelyn Ballantine*
JOCELYN BALLANTINE
*Assistant United States Attorney*
*555 Fourth Street, NW, Room 11-858*
*Washington, D.C. 20530*
*(202) 252-7252*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B)(ii) because it contains 3,900 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word in Calisto MT 14-point font, a proportionally spaced typeface.

/s/ *Jocelyn Ballantine*
JOCELYN BALLANTINE

**CERTIFICATE OF SERVICE**

I hereby certify that on June 10, 2020, I electronically filed the foregoing brief with the Clerk of the Court by using the appellate CM/ECF system. I further certify that the participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ *Jocelyn Ballantine*
JOCELYN BALLANTINE